## Mike C. LeMaster v. The State.

### No. 4163. Decided April 18, 1917.

### Rehearing overruled June 29, 1917.

**1.—Violation of Bank Law—President of State Bank—Indictment.**

Where, upon trial of becoming indebted to a State bank of which defendant was president without the consent of the board of directors, etc., the indictment followed the statute and approved precedent, the same was sufficient on motion to quash. Davidson, Presiding Judge, dissenting.

**2.—Same—Evidence—Other Transactions—System—Res Gestae.**

Where defendant was indicted as president of a State bank for becoming indebted thereto in the sum of $8000 without the consent of a majority of the board of directors, which transaction was based upon a certain cattle deal, it was reversible error to permit the State to introduce testimony of other subsequent cattle deals which had no connection with the transaction alleged in the indictment, and especially as the court failed to limit said testimony, which did not show system and was no part of the res gestae.

**3.—Same—Evidence—Withdrawal of Testimony—Cross-examination.**

Where, upon trial of a violation of the State bank law, the State was permitted to introduce testimony of some matters that occurred on the trial of a civil case, which the witness took down as a stenographer, and in which the defendant had testified, and it developed in the course of the testimony that on the trial of said civil case the defendant won the suit, the State should not have been permitted to withdraw said testimony on the ground that it did not purpose to introduce the record in said civil case, and this although much of the favorable testimony for the defendant was brought out on cross-examination. Following Speight v. State, 1 Texas Crim. App., 552, and other cases.

**4.—Same—Rule Stated—Adverse Testimony.**

Where the State introduced a witness who testified without objection by the defendant, the State could not, because the testimony was somewhat damaging to its case, withdraw it from the jury, and this although much of it was brought out on cross-examination by the defendant. Following Moore v. State, 6 Texas Crim. App., 562, and other cases.

**5.—Same—Charge of Court—Variance.**

Where the indictment charged the defendant with becoming indebted to a State bank as its president, without the consent of the board of directors, etc., and did not charge that he was criminally liable as a director of said bank, it was error to base a charge of the court upon that character of case.

**6.—Same—Partnership—Charge of Court—Secret Partner.**

Where, upon trial of becoming indebted to a State bank of which defendant was president, etc., the State relied on the testimony of one of its witnesses that defendant was a secret partner in the profits and losses that might arise in a certain option contract concerning a cattle deal, for which the bank was supposed to have furnished the money without the consent of the directors, etc., the jury should have been instructed that in order to convict the defendant, that they must find that defendant became indebted to the bank by means of this partnership, and the failure of the court to so charge is reversible error.

**7.—Same—Charge of Court—Partnership.**

Where, upon a trial of the violation of the State bank law in which the State claimed that the defendant was a secret partner with others in a certain cattle deal in which he, as president of the bank, had advanced money of the bank without the consent of a majority of the bank directors, etc., the court did not apply the law of partnership to the facts in the case and how defendant was connected therewith, but merely gave the law of partnership, the same was reversible error, although somewhat favorable to the defendant.

**8.—Same—Charge of Court—Partnership—Converse Proposition.**

Where, upon trial of a violation of the State bank law, the issue arose as to whether the defendant was a secret partner in a certain cattle deal upon which he, as president of the bank, advanced the bank's money without the consent of a majority of the directors of the bank, and the court's charge only submitted one side of it, and did not charge the converse of the proposition, the same was reversible error.

**9.—Same—Insufficiency of the Evidence—Practice in the District Court.**

See opinion of the judge who wrote same doubting that the evidence is sufficient to sustain the conviction, and suggesting that if the case is further prosecuted, the testimony should be limited to the transaction upon which the State claims a conviction, and not to other transactions which in no way related to the one under investigation.

**10.—Same—Motion for Rehearing—Matters Stated in Opinion.**

·Where the State contended that it was not responsible for the withdrawal of unfavorable testimony which had been given by a State's witness, and that it had only undertaken to withdraw the testimony which the State introduced and did not undertake to withdraw the testimony introduced on cross-examination, and it appeared from the record that the matter was so intermingled with other matters in the case that said testimony could not have been withdrawn from the jury without injury to the defendant, there was reversible error.

Appeal from the District Court of Potter. Tried below before the. Hon. H. L. Umphres.

Appeal from a conviction of unlawfully becoming indebted to a State bank of which defendant was the president; penalty, two years. imprisonment in the penitentiary.

The opinion states the case.

*A. A. Lumpkin* and *Cooper & Merrill*, for appellant.—On question of insufficiency of the indictment: French v. State, 14 Texas Crim. App., 76; Augustine v. State, 52 S. W. Rep., 77; Ex parte Marshall,. 72 Texas Crim. Rep., 83, 161 S. W. Rep., 112; Martin v. State, 72 Texas Crim. Rep., 454, 162 S. W. Rep., 1145; Young v. State, 74 Texas Crim. Rep., 133, 167 S. W. Rep., 1112.

On question of introducing evidence of other transactions: Neuman

v. State, 58 Texas Crim. Rep., 248, 125 S. W. Rep., 29; Miller v. State, 79 Texas Crim. Rep., 9, 185 S. W. Rep., 29; Harris v. State, 55 Texas Crim. Rep., 469, 117 S. W. Rep., 839; Gardner v. State, 55 Texas Crim. Rep., 394, 117 S. W. Rep., 148.

On question of court's charge on partnership, etc.: Napoleon v. State, 3 Texas Crim. App., 524; O'Morrow v. State, 147 S. W. Rep., 253; Maples v. State, 56 Texas Crim. Rep., 39, 119 S. W. Rep., 105.

*E. B. Hendricks* and *Martin, Kinder, Russell & Zimmerman,* for the State.—On question of sufficiency of the indictment: McFanin v. State, 41 Texas, 385; Bigby v. State, 5 Texas Crim. App., 101; Antle v. State, 6 id., 202; Long v. State, 10 id., 195; Singh v. State, 66 Texas Crim. App., 156, 146 S. W. Rep., 893; Bradfield v. State, 73 Texas Crim. Rep., 353, 166 S. W. Rep., 734; Taylor v. State, 76 Texas Crim. Rep., 642, 177 S. W. Rep., 83; Hoskey v. State, 9 Texas Crim. App., 202.

On question of partnership: Cathron v. Marmaduke, 60 Texas, 372.

On question of limiting testimony: Bailey v. State, 69 Texas Crim. Rep., 474, 155 S. W. Rep., 536.

DAVIDSON, Presiding Judge.—Appellant was convicted of becoming indebted to a State bank, of which he was president, in the sum of $8000.

The first count in the indictment sets out the particulars of the transaction relied upon by the State, but this count was discarded by the court in submitting the case to the jury, and he submitted only the second count, omitting the third count. The count submitted charged that appellant was duly elected, qualified and acting president, and a member of the board of directors of the First State Bank of Amarillo, a banking corporation theretofore incorporated and engaged in the business as a State bank in the City of Amarillo under the authority of the laws of the State, and as said officer he became indebted to the bank in the sum of $8000, without the consent of the majority of the board of directors, and without having the matter duly registered or inscribed upon the minutes of the bank.

The indictment is attacked in that it fails to apprise the defendant of the nature and circumstances of the case and wherein he had violated the law. He invokes the statutory rule, which is settled, that everything necessary to be proved must be alleged in the indictment. We are of opinion this indictment is too general and does not specifically notify the defendant of the transaction for which he is to be tried, and that the only allegation in the submitted count is of a very general nature and to the effect that he became indebted to the bank in the sum of $8000 without proper authority from the board of directors. The writer is of opinion, without going into a discussion at any length of the matter, that the count submitted to the jury is not, within the contemplation of the law, sufficient. The general allegation that appellant had become indebted to the bank in the sum of $8000 is too

general. There is a want of particularity about it, and it does not inform the defendant of what transaction he is charged. There is nothing to describe the manner of indebtedness, or how it came about, so as to notify defendant of the matters and transactions that he was to meet by the proof. The first count set out particularly these· different matters and gave appellant notice of how and when and the circumstances attending the indebtedness, and how it came about, but the court did not submit this to the jury. This much is said in a general way.

It will be noticed upon investigation of the case that all the facts to be relied upon by the State were known at the time the indictment was presented, and as to how the indebtedness was created, if there was any. The facts in this connection, as relied upon by the State, were made through the testimony of an accomplice, McSpadden. His testimony, substantially, is that Morris came to and notified him of the fact that he could buy an optional cattle contract, the cattle being in Arizona; that he thought this option could be bought at $5000, and if he had the money the trade could be made and profit made out of it by selling this contract for an enhanced value to other parties. His object in calling McSpadden was that McSpadden might enable him in some way to get the money. They discussed it, and McSpadden not having the money suggested they see appellant, who was president of the State Amarillo Bank, and get him to furnish the money. Appellant was called, and McSpadden's testimony is to the effect that after discussing it appellant agreed to furnish the money, Morris and McSpadden signing the note at the bank for $5000. There was something said to the effect that it was not probable that the option could be bought at $5000; that it might take more money. McSpadden further testified that appellant, Morris and himself agreed that Morris and McSpadden were to sign a note to the bank and have the money transferred to their credit, and that appellant was to be a partner in the profits and maybe losses, but his name not to be known in the matter, and in this way that appellant became a partner in the purchase of the cattle option contract. He also testified that there was no other cattle contract in contemplation or discussed between them at the time. His language was: "Yes, sir; it was agreed that Mike C. LeMaster was to advance the money on the condition that I went along and used what influence I possessed to keep Morris from getting drunk and Gus agreed not to get drunk any more and straighten up. There was nothing said at that time about any other transaction. We were to do the best we could. We did not know exactly how much money it would take but we were to let Mr. LeMaster know. We wanted to get an option on the cattle for spring delivery and then sell the option. The agreement was that Mr. LeMaster was to advance the money to be paid as a forfeit on the cattle and Morris and myself were to go out there and get a contract and purchase them and sell the contract." This occurred on the 26th day of December, and on the 27th a note

was executed by Morris and McSpadden to the bank, appellant's name
not appearing in any of these matters. Upon signing the note Morris
and McSpadden left Amarillo and went to El Paso. They there got
in touch with the owners of the cattle and bought the option. The
owners of the cattle, however, required eight thousand instead of five
thousand dollars. By wire appellant was notified of that fact. He
took the Morris and McSpadden note and wrote above the five thousand,
three thousand. The intention it seems was to make the note for
eight thousand dollars instead of five thousand dollars. The deal was
made, and in three or four days the option was transferred at a profit
of considerable amount and closed out, and Morris and McSpadden
came back to Amarillo and deposited the money in the State bank at
Amarillo, and on the 6th of January took up and paid off the note.
Appellant was not in Amarillo at the time but was in Fort Worth. He
knew nothing about the payment of the note until later information
was conveyed to him. Morris testified in many respects as did Mc-
Spadden, but he denied that LeMaster had or was to have any interest
in the option contract, and was in no way connected with the profits
or losses. In fact, he was in no sense, or in no way interested in the
contract, nor was he to receive any profits, dividends or pay any losses.
Appellant testified in his own behalf as did Morris. After returning
to Amarillo and taking up the note McSpadden and Morris, without
the knowledge of appellant, went to New Mexico with a view of pur-
chasing other cattle. Appellant had nothing to do with this and
knew nothing of this matter. There were other subsequent cattle deals
by McSpadden and Morris which the State undertook to connect appel-
lant with by McSpadden's testimony. Both Morris and appellant de-
nied that there was any partnership. There was evidence introduced
by the State to show these subsequent transactions, over the protest
and objection of appellant. We are of opinion these objections were
well taken. The court also failed to limit this testimony. Having
admitted the testimony, the court should have limited it. It was not
in reference to the original case and could not be, and if it was intro-
duced for any purpose it was to show that by reason of the subsequent
transactions between the parties that they were partners in the original
transaction declared upon in the indictment. As before stated, we
are of opinion these matters should not have gone before the jury,
but having been permitted to be introduced, the court should have
limited them to their proper office in his charge. The State's testi-
mony as well as that for the defendant all agree that if appellant had
any connection with any of these transactions it was the one based on
the note and the sum finally drawn from the bank of eight thousand
dollars, which was paid back within ten days by Morris and McSpadden.
McSpadden says there was no other transaction in contemplation or
under discussion. Morris uses the same language and testifies to the
same thing; so does appellant. So it would be evident that subse-
quent transactions if entered into independent or disconnected with

the first, not growing out of or related to it in any way, could not come into the case as testimony on the question of partnership in the first transaction. There was nothing said, as McSpadden, Morris and LeMaster all testify, as to any other trade either then or in contemplation for future dealings. The fact that later they may have made other trades, or that appellant may have become interested in later transactions, could not afford testimony proving a partnership in a single transaction which begun and ended with itself. These latter matters had no relation to or bearing upon the case; they did not serve to identify or develop the case; were not res gestae, nor could possibly reach the question of system. The matter is here dealt with generally without going into details as shown by defendant's bills of exception with reference to these matters. There are several of these matters, all of which upon another trial should be excluded.

The State introduced Mr. Mood as a witness, and was proving by him some matters that occurred on the trial of a civil case in which he took down the testimony as stenographer. It seems they were seeking to prove the testimony of appellant while testifying in his own behalf on the trial of the civil case. There are several pages of these questions and answers set out in the bill so as to make it clear and plain. It developed in his testimony that on the trial of the civil case appellant won; that the jury found a verdict in his favor. When the testimony of Mr. Mood was complete, or they had become satisfied about it, the State moved to exclude all his testimony from the consideration of the jury. The appellant excepted. The State's counsel put their motion to withdraw the testimony on the ground that they did not purpose to introduce the record in the civil case. These matters are generally stated and not the details. We are of opinion that the objections of the defendant were well taken. The testimony should have remained before the jury. Among the early cases on this question in Texas is Speight v. State, 1 Texas Crim. App., 552. The first section of the syllabus of that case sufficiently states the question: "If the accused elicits testimony adverse to himself, he must take the consequences; and he is not entitled to have it withdrawn from the jury because part of the same proof, when offered by the prosecution, had previously, on his objection, been excluded by the court." In that case the defendant moved to exclude testimony introduced by himself that he thought adverse to him. The State would occupy no better position under the same circumstances than would appellant. The testimony, as said in the Speight case, if illegal at all, was his own testimony, and we opine he ought to be held to take the consequences, and could not exclude it simply because it was found to be unfavorable to his case. In Moore v. State, 6 Texas Crim. App., 563, the question came again. The head-note of that opinion is as follows: "If the defendant elicits testimony adverse to himself, he must abide the consequences; and that a State's witness, upon cross-examination by the defendant, testified to a confession made after arrest, is not cause for

a new trial, as having improperly gone to the jury." This doctrine was approved in Allen v. State, 8 Texas Crim. App., 67, and Robins v. State, 9 Texas Crim. App., 671. In the case of McDade v. State, 27 Texas Crim. App., 641, the question again came. At page 689 of that report the court said: "In the seventh assignment of error it is complained that 'the court failed to instruct the jury that the declaration of Allchin to Felker that threats had been made against him by defendant was not any evidence that such threats were made, and that they should not consider such statement as a part of the evidence for that purpose, when it was expressly requested so to charge by defendant.' This evidence was drawn out by defendant upon the direct examination of his witness Felker, and neither the prosecution nor the court was responsible for it. If the defendant elicits testimony adverse to himself he must abide the consequences," citing Speight v. State, 1 Texas Crim. App., 551, and Moore v. State, 6 Texas Crim. App., 562.

The State having introduced Mr. Mood as a witness, and his testimony being introduced without objection from the defendant, the State could not, because the testimony was somewhat damaging to its case, withdraw it from the jury. The State introduced it and could not withdraw it over objection of appellant. The above cited cases seem to settle that question.

There are exceptions to the second subdivision of the charge on various grounds. This subdivision limits the jury to the second count, and charged if the jury should find appellant was an officer duly elected, qualified and acting president and a member of the board of directors of the State bank, and that the bank was incorporated, etc., and he became indebted to that bank in the sum of eight thousand dollars without proper authority from the board of directors, they should convict him. It will be noticed in this connection that this charge submits the fact that he was president and one of the board of directors. The indictment, while it mentioned the fact that he was an officer and member of the board of directors, it did not attempt to charge him with being guilty of violating the State law as a director, but only as president or acting president. The president can not borrow any amount of money from the bank without proper authority. The indictment did not undertake to charge any matter that would make him criminally liable as a director. He was charged as the president of the bank and not as a member of the board of directors. If he was sought to be convicted as a director, then the charge should have specifically brought that matter to the attention of the jury.

It will be noticed that this charge does not undertake anywhere to inform the jury as to the relation of appellant to the amount of money or the circumstances by which he could have possibly been indebted to the bank. All the testimony and the indictment excludes the idea that his name was on the bank books. The proof all shows that it was not, and that there was no contract and no evidence in the bank books, records or papers that his name was in any way connected with

any indebtedness to the bank. The only way by which it was sought to hold him liable was through the testimony of McSpadden that he was a secret partner in the profits and losses that might arise in the option contract which Morris and McSpadden accomplished and for which the bank is supposed to have furnished the eight thousand dollars. In order, therefore, to hold appellant guilty, the charge should have conformed to the facts, and in order to hold him the State would have to show that he was guilty under the circumstances detailed by the State's witness as partner. In other words, in order to convict appellant the jury should have been instructed that they would have to find that appellant became indebted to the bank by means of this partnership matter about which McSpadden testified. This was the State's case, and it was all the State had or put into the trial.

In this same connection it may be well enough to notice that section 3 of the charge is a general statement of the law of partnership as understood by the court in giving his charge, and it reads as follows:

"A partnership is formed by two or more persons placing their money, effects, labor and skill or some one or all of them in business with the purpose and intention of dividing the profit and bearing the loss in certain proportions and may be made and entered into either by express agreement, oral or written, of those forming the partnership or it can result from the conduct of the parties in relation to the business. Those forming the partnership are partners.

"When a partnership is formed each individual partner in relation to partnership business in law binds himself and each of the other members of the partnership jointly and severally for any partnership obligations made in furtherance of the partnership enterprise and within the scope of the partnership business."

This is all the charge with reference to partnership. It will be seen that it has no reference to and is not connected back with the other charge; nor does the other charge refer to partnership, nor is the jury charged that if appellant was a partner within the terms of the law with McSpadden and Morris and under that partnership there was or could be an indebtedness created for which appellant would be responsible, they might convict. This definition of partnership is thrown into it in a general way without any application of the rule of partnership to the facts in the case, or facts of the case to the partnership. In the second clause of the charge which submits the law for conviction the partnership is not mentioned. Under the facts it was all the State had upon which to predicate a conviction. In the charge on partnership it does not inform the jury that if appellant connected himself with this indebtedness by means of this partnership and was responsible under the terms of the contract by reason of this partnership, that he might be liable for the indebtedness, but instructs the jury to convict for the indebtedness in the second clause, and gives a general definition without any application of the law to the facts of partnership. If appellant was guilty at all it was under McSpadden's

testimony to the effect that he agreed to divide the profits and losses and carry the partners under the contract, and that he did furnish the money from the bank. The State admits error in the charge on partnership as given, but asserts the error was favorable to appellant. It was error and we think harmful. The error is conceded; the verdict was guilty. What may have been the verdict under a correct charge is speculative, but it is not speculative that he was found guilty.

There is another phase to this charge that is fatal. McSpadden swore to this partnership as set out in the early part of the opinion. Morris and appellant denied it emphatically. There was an issue sharply drawn by this testimony as to whether this partnership existed or not. The bulk and the weight of the testimony was that the partnership did not exist. The jury so found by their verdict in the civil proceeding and exonerated appellant as partner and found in his favor in the suit against himself and Morris by McSpadden. This was shown by the testimony of Mood. Now the converse of the proposition, had the partnership been properly charged, was if the jury should find there was no partnership existing between these parties at the time, they should find in his favor and acquit him. Such omission is fatal error.

It is contended that the evidence is not sufficient to show that appellant was a partner and that through the partnership became indebted to the bank. The writer is of opinion that this proposition is correct. McSpadden testified, and he alone, that appellant was to be connected with the profits or losses, and Morris testified positively that such was not the case, and that he and McSpadden alone were responsible, and that he was to get two-thirds of the profits and McSpadden one-third, and that appellant had nothing to do with it. McSpadden testified they were to be equal partners, each getting a third. There were some telegrams passing between the parties with reference to this eight thousand dollar option contract introduced by the State, but these did not show that a partnership existed. It was with reference to the fact that the five thousand dollars first agreed upon and mentioned in the note was not sufficient, and appellant agreed to furnish the extra three thousand dollars from the bank, and later wrote it in the note. The note was payable to the bank and appellant was in no way concerned with it, and if he was connected in any manner with it it was by reason of McSpadden's testimony, which appellant and Morris both denied. As it occurs to the writer, there is no testimony which supports or corroborates McSpadden in his statement. If, however, the State should further prosecute, the testimony should be limited to the transaction about which the witnesses testified and not extend it to subsequent contracts in no way connected with or related to the one under investigation.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

June 29, 1917.

DAVIDSON, PRESIDING JUDGE.—On a former day of the term the judgment was reversed and the cause remanded. The State contends in a motion for rehearing that the court was in error in holding that the indictment was not valid. It was stated that the general allegation that appellant had become indebted to the bank in the sum of eight thousand dollars was not specific enough and entirely too general; that it was wanting in particularity, and failed to inform the defendant of the transaction for which he was to be tried. The writer, upon further investigation, still adheres to his original views. The majority, however, do not agree with him. Under the view of the majority the former opinion will be modified and the indictment held sufficient to charge appellant in a general way with becoming indebted to the bank in the specified sum. The indictment contained three counts. The first set out the facts attending the transactions by which it was sought to connect appellant with violating the banking law, he being president of the bank. That count, however, was not submitted to the jury by the court, and passed out of the case. The second count was submitted in which the general allegation was made that appellant became indebted to the bank of which he was president. Under these allegations the State would be required to prove that appellant had become directly indebted to the bank, and that proof of the matters and facts set up by the State in its evidence would not meet the count upon which the conviction was obtained, which evidence was to the effect that appellant and McSpadden and Morris entered into an agreement by which they were to buy cattle and the bank furnish the money, predicated upon a note given by McSpadden and Morris, and the money transferred on the books of the bank to their credit, and that appellant would be a partner in the profits and losses of the cattle transaction for which the note was given to secure funds in payment of the cattle. Appellant's name does not appear anywhere either in the note or on the bank books, and on the face of the transaction he is not directly shown to be connected with any of those matters. In other words, it was a secret partnership, if it existed. This was perhaps the most serious question in the case so far as the evidence was concerned. So following the views of the majority, the count will be held sufficient to charge an offense, but not to admit evidence of the transactions showing an indirect liability as sought by the State that this would be a variance between the allegation in the count submitted and the evidence, and, therefore, the evidence did not support the finding of the jury under the count and the charge submitting that count.

In regard to what was said in the original opinion with reference to a bill of exceptions which contains matters and things set out through the witness Mood, the State contends that the opinion was

in error in holding that State's counsel was responsible for withdrawing all the testimony of Mood from the jury. The contention is that the State did not withdraw the statements of Mood on cross-examination by appellant's counsel to the effect that appellant had won the civil suit. Strictly and technically speaking this contention may be correct. The bill in regard to this matter shows that when Mood was placed upon the stand and the various questions asked and answers elicited, he was then passed to appellant's counsel for cross-examination, and, among other things, it was elicited from him that appellant had won the civil suit in which McSpadden sued Morris and himself for settlement of alleged partnership matters, which involved the eight thousand dollar matter. State's counsel objected to this cross-examination as to the matters elicited from Mood, but the court overruled the objection upon the ground that the State had drawn out the matter and this was a legitimate cross-examination. When this occurred the bill of exceptions recites that, "Thereupon the State rested, and stated they desired to consult a moment, and within a few minutes returned to the court and through their private prosecutor, Mr. Martin, stated to the court, 'We are not going to introduce any of the record and we ask that the court strike out the testimony of Mr. Mood in regard to it.' (The record referred to being the transcript of what purported to be the statement of facts in the case of W. A. McSpadden v. R. A. Morris et al., in which the State's counsel had attempted to prove up by A. M. Mood for the purpose of offering the same and parts thereof to impeach the defendant as a witness.) The court then stated, 'What part of the record do you have reference to?' Mr. Martin stated in reply to such question, 'All of Mr. Mood's testimony identifying the record, since we are not offering any of the record, that evidence would serve no purpose. We do not intend to offer the record and we would like to have this testimony stricken from the record since it does not tend to prove any issue in this case.'" Thereupon defendant's counsel objected to the withdrawal of any of the testimony by the State for the reason they had offered the same and when it was proved harmful to them they desired to withdraw it, and that it was material and beneficial to the defendant, and that they had no power to withdraw it when they had offered it themselves and they considered it harmful, to then be permitted to withdraw it. The court not specifically ruling on the objection but turned to the jury and instructed them as follows: "I will strike out and instruct the jury not to consider the testimony of Mr. Mood." In the former opinion the writer was under the impression that, legally speaking, State's counsel were responsible for being really the moving parties in getting the matter before the jury as well as to its final withdrawal or exclusion after putting it in before the jury; that it was too late for the State to withdraw it after cross-examination of the witness in reference to the matter they had drawn out, and that their motion had it been sustained would practically have operated to withdraw all the testimony of the witness Mood,

whether it was direct or cross-examination. If the writer was in error about this then counsel for the State may not have been altogether responsible for the withdrawal of Mood's testimony favorable to the defendant. But the matter was so intermingled—the direct and cross-examination taken with the remarks of the court it occurred to the writer that the effect of the State's motion was to withdraw all the testimony, especially in view of the fact that this motion was not made until after Mood developed the fact that appellant had won the civil suit. This testimony seems to have been introduced by the State for the purpose of laying some predicate with reference to the case and the testimony of defendant in the civil suit, but when Mood testified to the fact that appellant had been eliminated from that record by the verdict of the jury, counsel moved to exclude or withdraw the testimony from the jury. State's counsel insist strenuously that they did not undertake to withdraw the testimony introduced on cross-examination, and that they were only undertaking to withdraw that which they introduced. Without going into any detail about the matter, or any discussion, we place it as the record does, so that it will be fully understood and its effect and result from the whole bill of exceptions may not be unjust to either side. The result, however, would be the same. This testimony was withdrawn from the jury, and under the circumstances it should not have been withdrawn.

It is deemed unnecessary to discuss the other matters.

Finding no reason why the motion for rehearing should be granted, it is ordered that said motion be overruled.

*Overruled.*