The judgment is reversed, and the cause remanded.

---

## COOPER v. STATE. (No. 7437.)

(Court of Criminal Appeals of Texas.
April 11, 1923.)

**1. Homicide ⚖⇒295(3)—Instruction on adequate cause for assault to murder held erroneous.**

In a prosecution for assault to murder, an instruction to convict of aggravated assault, if the jury believed certain facts, unless defendant was moved by some adequate cause to such a degree of anger, rage, sudden resentment, or terror as to render him incapable of cool reflection, and that any circumstance capable of creating sudden passion, such as anger, rage, etc., rendering the mind incapable of cool reflection may be adequate cause, held erroneous as not in conformity with Pen. Code 1911, art. 1130, defining adequate cause, and failing to affirmatively charge that an insult to a female relative, which was shown by the evidence, would be adequate cause (article 1132).

**2. Homicide ⚖⇒310(2)—Instruction that, if specific cause produced such rage as to render accused incapable of cool reflection, offense would be no more than aggravated assault, necessary.**

Where some specific cause for passion, supported by testimony, and not insufficient under Pen. Code 1911, art. 1131, is asserted as a basis for reducing murder to manslaughter, or assault to murder to aggravated assault, an instruction that, if such cause alone, or in conjunction with other acts and conduct of the injured party, produced such rage, resentment, etc., as to render defendant's mind incapable of cool reflection, the offense would be no more than manslaughter or aggravated assault, or an instruction submitting the affirmative issue, should be given.

**3. Criminal law ⚖⇒390—Exclusion of defendant's testimony that prosecuting witness' remark made him so mad he could not control himself held erroneous.**

In a prosecution for assault to murder, refusal to allow defendant to testify that prosecuting witness' statement to him, "You are just like your damned old mammy," made him so mad that he was incapable of controlling himself, and immediately shot prosecuting witness, held erroneous.

**4. Homicide ⚖⇒31—"Manslaughter" voluntary and intentional killing, but not killing on malice aforethought.**

Manslaughter is a voluntary and intentional, as well as unlawful, killing, but not a killing on malice aforethought.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Manslaughter.]

**5. Homicide ⚖⇒286(2)—Charge defining malice aforethought held erroneous.**

In a prosecution for assault to murder, a charge defining malice aforethought as the voluntary and intentional doing of an unlawful act in a manner showing a heart regardless of social duty, and fatally bent on mischief, held erroneous.

**6. Criminal law ⚖⇒396(2)—Defendant's statement that he went to prosecuting witness' home to kill him held admissible.**

In a prosecution for assault to murder, the sheriff's testimony as to defendant's statement while under arrest that he went to prosecuting witness' home to kill him held admissible, under Code Cr. Proc. 1911, art. 811, as shedding light on prosecuting witness' statement on cross-examination of his opinion of any

---

⚖⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes:

man who would call out another and shoot him as defendant did.

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Will Cooper was convicted of assault to murder, and he appeals. Reversed and remanded.

M. W. Burch and McMurray & Gettys, all of Decatur, for appellant.

R. G. Storey, Asst. Atty. Gen., for the State.

LATTIMORE, J. Appellant was convicted in the district court of Wise county of assault to murder, and his punishment fixed at two years in the penitentiary.

Brooks, a negro preacher, lived next door to appellant, also colored. There were boys in each family, and occasionally they fought. The families were not on the best of terms. Appellant's father died when he was a small boy, and he and his mother constituted the family, and lived together for many years, the evidence showing much affection between the two. Some years before the shooting which led to this prosecution one" of the boys of Brooks had a fight of some kind with appellant's old mother, in which, if we understand the record, he got her down on the ground, and either "stamped" her with his feet or jumped up and down on her stomach with his knees. From injuries then inflicted, according to defense witnesses, the old woman suffered until her death some two years later. She had opposed Brooks as pastor of the First Baptist Church, Colored, of Decatur, because as he said he believed in the "ministry of restriction," and, having carried her opposition to the extent of calling Brooks' wife ugly names, the old woman was excluded from the church. According to the defense witnesses, threats to do various members of appellant's family as "Son done old Margey" were made by Brooks and his boys every now and then, and communicated. A witness swore that not long before the shooting Brooks threatened to cut appellant in two, and this was also communicated. On the morning of the day of the shooting two of the Brooks boys "jumped on" the boy of appellant, and, according to the latter's testimony, both were bigger than he, and while the fight was in progress Dick Brooks said that "Daddy was going to get appellant just like Son got old Margey." Appellant's boy after the fight went to where his father and mother worked at Mr. Lillard's, and told them what had occurred. This shooting took place about 30 minutes after appellant, his wife and boy got home.

Brooks was in his barn, and appellant walked to the fence separating the two places, and told a son of Brooks that he wished to see his father. Brooks came out and to the fence. The state's theory, supported by Brooks, and to some extent by his son, is that appellant wanted to know if Brooks could not keep his boys from fighting appellant's boy, and Brooks replied, "Bill, you have got a bad boy;" that appellant with an oath wanted to know if Brooks could not stop those boys from fighting his boy, and that Brooks said he did not know if he could stop it or not, and appellant with another oath said he could stop it, and pulled an automatic pistol and shot four times at Brooks, who took to his heels, two shots taking effect in different parts of his body. Brooks went to a neighbor's and phoned for the officers, who came, meeting appellant on their way, at which point Brooks also came up, and out of some mild conversation occurring at this time, in which Preacher Brooks called appellant a low-down, black son of a bitch, arises some complaint made by appellant.

Appellant's theory, supported by his witnesses, was that, when Brooks came toward him, he had his hand in his pocket, and that in the acrimonious exchange of words that followed Brooks said, "You are just like your damned old mammy," and that, being already mad, and of the opinion that Brooks was going to carry out the threats previously made and communicated, appellant pulled out his pistol and fired as fast as he could immediately upon the use of the above language. The learned trial judge submitted the law of murder, manslaughter, of self-defense, and aggravated assault. The charge was excepted to as not giving the law applicable to the facts presenting manslaughter, and in this connection several special charges were asked and refused, in which appellant sought to have the law applied to manslaughter, as he deemed it finding support in the testimony. As applicable to manslaughter the court gave only the following:

"If you believe from the evidence beyond a reasonable doubt that the defendant, in the county of Wise and state of Texas, on or about the time charged in the indictment, with a deadly weapon, did unlawfully assault the said Y. B. Brooks, but at the time of making such assault the defendant was, by some adequate cause, as hereinafter explained, moved to such a degree of anger, rage, sudden resentment, or terror as to render him for the time incapable of cool reflection, and in such a state of mind he committed said assault, and that such assault was not in defense of himself from an unlawful attack producing a reasonable expectation or fear of death or serious bodily injury, as that matter has been hereinbefore explained, then you will find the defendant guilty of an aggravated assault, and assess his punishment at a fine not less than $25 nor more than $1,000, or by imprisonment in the county jail not less than one month nor more than two years, or by both such fine and imprisonment, as you may determine and state in your verdict.

"You are instructed that any condition or circumstance capable of creating and which does create sudden passion, such as anger,

rage, sudden resentment, or terror, rendering the mind for the time incapable of cool reflection, whether accompanied by bodily pain or not, may be adequate cause; and whether such adequate cause existed for such sudden passion (if any there was) it is for you to determine, and in determining this question, as well as all other matters before you, you will consider all the facts and circumstances in this case."

As we understand appellant's contention in this regard, it was that, from a course of continued aggravating conduct on the part of Brooks and his boys, his mind was inflamed, and that to what his son had told him of the fight that morning and the report of threats of Brooks was added the insulting statement regarding appellant's mother, which is above quoted, and that this fresh insult made him so angry that he shot Brooks in that condition of mind which ought to reduce his crime, if any, to aggravated assault. An exception was directed at the failure of the charge to inform the jury that, if they believed that such language was used, and that this, added to prior threats of Brooks, and insulting words or conduct on his part, created in appellant's mind such a degree of terror, etc., as to render it incapable of cool reflection, and that under the influence of such mental condition he shot Brooks, he would be guilty of no more than aggravated assault. In our opinion the charge should have affirmatively presented this issue.

[1] Our statute (article 1130, P. C.) defines adequate cause as such as would produce that degree of rage, anger, etc., in a person of ordinary temper sufficient to render the mind incapable of cool reflection. An examination of the definition of adequate cause as given in the charge and quoted above, which presents the only definition given, will disclose that it is not in conformity with the statutory definition. Article 1132 names various matters which may be deemed adequate causes, among which are enumerated insulting words or conduct toward a female relative. Appellant excepted to the charge as given for its failure to affirmatively submit to the jury that an insult to a female relative would be adequate cause, and in this connection submitted several special charges, in which he sought to have the jury told that same would be adequate cause. A further analysis of the charge of the learned trial judge as quoted above discloses that it only gave the most general definition of adequate cause, and left the jury to their own conclusions and deductions as to what would constitute same, and furnished them no standard by which they might go.

[2] In any case where reliance is had on some specific cause asserted as the basis for manslaughter passion causing the attack by the accused, and this is supported by testimony, and such cause is not one of those rejected by article 1131 of our Penal Code as insufficient, if the accused be not satisfied with the general definition such as was here given, and request an instruction to the effect that, if the particular matter claimed to have caused such passion, either alone or in conjunction with other acts and conduct of the injured party, did in fact produce in the mind of the accused such a degree of rage, resentment, etc., as to render his mind incapable of cool reflection, and while in such passion he committed the act, it would be no more than manslaughter, it should be given, or one submitting the affirmative issue.

[3] Also in this connection appellant has a bill of exceptions to the refusal of the trial judge to allow him to testify that, when Brooks said to him, "You are just like your damned old mammy," it made him so mad that he was incapable of controlling himself, and immediately shot Brooks. The bill is approved without qualification, and in our opinion presents error.

[4, 5] We note that the court's charge defining malice aforethought is as follows:

"Malice aforethought is the voluntary and intentional doing of an unlawful act by one of sound memory and discretion, with the purpose, means, and ability to accomplish the reasonable and probable consequences of it, done in a manner showing a heart regardless of social duty and fatally bent on mischief, the evidence of which is inferred from acts committed or words spoken."

The substance of this charge is condemned in Hayes v. State, 14 Tex. App. 330. We observe that manslaughter is both voluntary and intentional, as well as an unlawful killing, but it is not deemed a killing upon malice aforethought. The jury in a given case may well believe that the accused shot with malice aforethought when same is defined as was done by the court in this case, and may convict for an assault to murder upon such belief, when upon a proper charge under the same facts they would only convict for manslaughter. Appellant asked a charge more fully and appropriately defining malice aforethought, which was sufficient, at least, to call the court's attention to the error in the above charge. Appellant also asked a special charge submitting to the jury the issue as to whether, in case they believed that Brooks said to him, "You are just like your damned old mammy," under all the circumstances of this case this was such insulting words directed at a female relative as might and did produce in his mind that degree of rage, resentment, etc., which would reduce a homicide to manslaughter, and in such case they should find him guilty only of aggravated assault. In Walker v. State, 89 Tex. Cr. R. 83, 229 S. W. 527, we said that, if the language used, claimed to be insulting to a female relative, be dubious, that is, not obviously insulting to

such relative, the question as to whether it was of that character might be one for the jury under appropriate instructions.

[6] While Brooks was testifying for the state he was asked on cross-examination what he said to appellant after the officers came, and he replied, "I said, Bill Cooper, you are a dirty, low-down son of a bitch, any man who would call another out and shoot him like you did me." Afterward, and while Sheriff Malone was on the stand for the state, he was asked relative to what he heard appellant say at the time Brooks came up, and over objection was allowed to state that appellant said to Brooks, "I went down there to kill you;" the objection being that appellant was under arrest and unwarned at the time. The ruling of the trial court in admitting said evidence is referable to article 811, C. C. P., which declares that, if part of a conversation be introduced by one party to a controversy, all of said conversation relating to the same subject-matter, or shedding light on it, may be introduced by the opposite party. The matter is not made quite clear by the bill of exceptions, but it appears that a statement by appellant that he went down to Brooks' to kill him would be admissible under the above rule as shedding light upon the statement of Brooks that any man who would call another out and shoot him as appellant did was appropriately described by the language used.

There are many other matters complained of in the record which will not likely occur upon another trial, and which will not be further discussed, in view of the fact that, in our opinion, for the errors above mentioned, the judgment must be reversed, and the cause remanded.