J. A. CLAXTON V. THE STATE.

No. 11126. Delivered November 23, 1927.

Rehearing denied March 21, 1928.

Second motion for rehearing denied April 11, 1928.

1.—Murder—Charge of Court—On Malice Aforethought—As Applied to Manslaughter—Erroneous.

Where, on a trial for murder, the issue of manslaughter being submitted in the charge of the court, appellant complains of the definition of malice aforethought in said charge it being: "the voluntary and intentional

doing of an unlawful act by one of sound memory and discretion, with the purpose, means and ability to accomplish the reasonable and probable consequences of the act," for the reason that under this definition the jury could not have acquitted appellant of murder, even though they believed the homicide was committed under the influence of sudden passion aroused by an adequate cause.

### 2.—Same—Continued.

In the case of Collins v. State, 108 Tex. Crim. Rep. 72, it was held that where manslaughter is an issue, malice should not be defined as denoting in its legal sense "the intentional doing of a wrongful act to another without legal justification," as such definition is subject to the objection that it can be applied to both murder, and manslaughter, each of those offenses involving the intentional doing of a wrongful act, and was there held that the objectionable definition of "malice aforethought" did not constitute reversible error. The holding in the Collins case is applicable here, and in this case the erroneous charge cannot be held to be reversible error, under Art. 666, C. C. P.

### 3.—Same — Charge of Court — On Adequate Cause — Erroneous, But Not Reversible.

Where the court in paragraph 12 as part of his affirmative charge on adequate cause, said, "The jury is at liberty to determine whether under all the circumstances, the insulting words or conduct if any, were the real cause of the killing," while such charge substantially embodied the provisions of Art. 1251 P. C., same was not applicable to the facts in this case and should have been omitted.

### 4.—Same—Continued.

But in the light of the charge as a whole, we do not believe that this instruction was calculated to mislead the jury, it being clearly presented in other paragraphs that it was immaterial whether appellant's daughter had actually been insulted by the deceased, Junek and McAlpine provided appellant had been so informed and acted upon the information received. It does not appear that this erroneous charge complained of was calculated to injure the rights of appellant, in the light of the charge as a whole.

### 5.—Same—Evidence—Of Several Crimes—When Admissible.

"If several crimes are intermixed or blended with one another, or connected so that they form an indivisible criminal transaction and full proof by testimony, either direct or circumstantial of any one of them, cannot be given without showing the others, evidence of any or all of them is admissible against a defendant on trial for any offense, which is itself a detail of the whole criminal scheme." See Underhill on Crim. Ev. (3rd Ed.), Sec. 152.

### ON REHEARING.

### 6.—Same—No Error Discovered.

We have examined with patience all the questions presented in appellant's motion for rehearing, but find nothing which to our minds would justify the court in ordering a reversal.

ON SECOND MOTION FOR REHEARING.

7.—Same—Evidence—Erroneously Admitted—Withdrawn by Charge—Error Cured.

Where, on a trial for murder, the state was permitted to prove that appellant was a larger and heavier man than deceased, and later in his charge the court instructed the jury not to consider said testimony, the error in its admission was cured by the charge. See Miller v. State, 31 Tex. Crim. App. 609, and Hatcher v. State, 43 Tex. Crim. Rep. 237 and other cases cited.

Appeal from the District Court of Milam County. Tried below before the Hon. John Watson, Judge.

Appeal from a conviction of murder, penalty ninety-nine years in the penitentiary.

This is the second appeal of this case. The first appeal is reported in 288 S. W. 444. The companion case of Claxton v. State is reported in 280 S. W. 832.

*E. A. Camp* and *Henderson & Henderson* of Cameron, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is murder, the punishment confinement in the penitentiary for 99 years.

This is the second appeal of this case. The first appeal is reported in 288 S. W. 444. The companion case of Claxton v. State is reported in 280 S. W. 832. In the instant case appellant was convicted of the murder of Otto Junek, and in the companion case of the murder of J. M. McAlpine. Both homicides resulted from the same transaction and occurred at the same time and place. The evidence disclosed by the present record is substantially the same as that shown in the former appeal of this case and of the companion case. In the companion case, the reversal was based mainly upon an error in the charge of the court. However, in reversing the companion case, the court said that "we are not to be understood as saying that the evidence may not be strong enough to support a conviction for murder, but that the mind of the court upon an examination of this record is left in such condition that we are desirous that the evidence should be passed upon again by another jury." The present case was formerly reversed upon an error in the court's charge. However, a careful review of the record of the former appeal led the court to the conclusion that the evidence was sufficient to support a conviction for murder. After a reversal of the judgment of the trial court, in granting the state's motion for rehearing, the court said:

"In the present record is the verdict of the second jury of the same nature. Upon reflection, it is believed that, in overturning the judgment of the jury and that of the trial court on the fact of mental agitation, this court, on the present record, has gone too far and should be impelled by duty to grant the state's motion for rehearing, to set aside the judgment reversing the conviction and to order its affirmance."

We now have in the present record the verdict of the third · jury of the same nature. The facts of the instant case being substantially the same as in the former appeal (288 S. W. 444), a recital thereof would be largely repetition. We content ourselves with the statement that we find no evidence in the record in addition to that contained in the former record, which would justify a recession from our former position. It follows that we must overrule appellant's contention that the court erred in embodying in his charge an instruction covering the law of murder. Appellant's contention that the evidence is insufficient to sustain a conviction for murder being necessarily involved in the proposition that the court erred in submitting to the jury the issue of murder, must likewise be overruled.

Appellant brings forward numerous exceptions to the court's charge. We deem it unnecessary to discuss but two of the propositions raised by such exceptions.

Appellant attacks the court's definition of malice and malice aforethought as applying equally to murder and manslaughter, his position being that under the definition submitted to the jury they could not have acquitted appellant of murder, even though they believed the homicide was committed under the influence of sudden passion aroused by an adequate cause. The court defined malice aforethought as "the voluntary and intentional doing of an unlawful act by one of sound memory and discretion, with the purpose, means and ability to accomplish the reasonable and probable consequences of the act." The term was further defined in the succeeding paragraph as follows:

"Malice aforethought includes those states of mind under which the killing of a person takes place without any cause which will in law justify, excuse or extenuate the homicide. It is a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from acts committed or words spoken."

The jury were instructed in immediate connection with the definition of malice aforethought that "malice ·in its legal sense

denotes a wrongful act done intentionally without just cause or excuse."

In the recent case of Collins v. State, 108 Tex. Crim. Rep. 72, we had occasion to discuss the question presented here. In that case, as in this, the jury were instructed, in connection with the definitions objected to, that malice was "a condition of the mind showing a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from acts committed or words spoken." In the Collins case, we held that where manslaughter is an issue malice should not be defined as denoting in its legal sense "the intentional doing of a wrongful act to another without legal justification," as such definition is subject to the objection that it can be applied to both murder and manslaughter, each of those offenses involving the intentional doing of a wrongful act. See Hays v. State, 14 Tex. Crim. App. 330; Cooper v. State, 250 S. W. 185. However, we approved the definition of malice aforethought as "a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from acts committed or words spoken," and held that the objectionable definition of "malice aforethought" did not constitute reversible error. The holding in the Collins case is applicable here, and we are constrained to overrule appellant's contention.

Appellant vigorously assails as error paragraph 12 of the court's charge, which reads as follows:

"The jury is at liberty to determine whether under all the circumstances, the insulting words or conduct, if any, were the real cause of the killing."

In paragraph 11 of the charge, the court instructed the jury as follows:

"You are further instructed that it is immaterial whether the deceased, Otto Junek, or J. M. McAlpine, each, either or both used insulting words to or conduct toward the daughter of the defendant, if you should find that the defendant was informed by his daughter, Vera Claxton, or in case of a reasonable doubt thereof, that the deceased, Junek, and said McAlpine, or either of them, did use insulting words to or insulting conduct toward Carrie Gunn and that defendant believed such information to be true, or in case of a reasonable doubt thereof, he would have the same right to act upon such information as if the deceased, Junek and McAlpine, each, either or both of them had in fact so used insulting words or conduct toward his daughter, if any."

Paragraph 14 of the charge reads as follows:

"If you believe from the evidence, viewed from the defendant's standpoint at the time of the homicide, or have a reasonable doubt thereof, that the defendant J. A. Claxton was informed that the deceased, Otto Junek, or that one J. M. McAlpine, while acting with Otto Junek, or that the said Otto Junek and said J. M. McAlpine, acting together, did use insulting words or insulting conduct toward Carrie Gunn, and that the defendant believed said information to be true, and such information produced in his mind either of the emotions of the mind known as anger, rage, resentment, or terror, rendering it incapable of cool reflection, and that acting under the influence of either of the said emotions of the mind known as anger, rage, resentment or terror, sufficient to render the mind incapable of cool reflection, he shot and killed said Otto Junek, at his first meeting with him after receiving said information, then the defendant would be guilty of no higher degree of homicide than manslaughter, regardless of where or the manner in which the homicide occurred."

Again in paragraph 18, the court charged the jury as follows:

"You are instructed that in determining whether the state of mind referred to in paragraph 14 of this charge did actually exist on the part of the defendant at the time of the commission of the homicide, and in determining whether such state of mind was produced by the information received by the defendant relating to the insulting words or conduct toward his daughter, Carrie Gunn, if you find from the evidence he did receive and believe such information, you should view the transactions and conditions surrounding the homicide from the defendant's standpoint and consider all of the conditions and circumstances in evidence, which, viewed from his standpoint, might cause such information to produce, on the part of the defendant, the state of mind referred to in such paragraph of the charge."

Appellant asserts that the instruction given in paragraph 12 is contradictory of the instructions contained in paragraphs 11, 14 and 18, and is the reverse of and contrary to the law of the case. He takes the position that the instruction complained of is equivalent to an instruction to the jury that it was immaterial as to whether the insult and abuse were actually offered if appellant had received and believed the information thereof, but that the jury, in determining whether the offense was murder or manslaughter could be governed by their finding as to whether such insult and abuse were actually offered and were

the real cause of the homicide, since the insult and abuse could not have been the real cause of the homicide, unless they actually had been offered. In short, appellant takes the position that the instruction complained of was calculated to lead the jury to believe that before they could reduce the homicide to manslaughter they must find that the insult and abuse were actually offered and were the real cause of the homicide.

In submitting paragraph 12, the court substantially embodied therein the provisions of Art. 1251, P. C., which provides that "the jury shall be at liberty to determine whether, under all the circumstances, the insulting words or gestures were the real cause of the killing." Being inapplicable to the facts of this case, paragraph 12 should have been omitted from the charge. However, considering the charge as a whole, we do not believe the instruction contained in paragraph 12 was calculated to mislead the jury. The attention of the jury was more than once directed to the fact that it was immaterial whether appellant's daughter had actually been insulted by the deceased, Junek and McAlpine, provided appellant had received and acted upon information believing the same to be true, and that such information produced in his mind anger, etc., rendering it incapable of cool reflection, etc. In the view we take of the matter, we are constrained to hold that under the provisions of Art. 666, C. C. P., we would be unauthorized to reverse the judgment of the trial court because of the error committed by the court in embodying paragraph 12 in the charge. It does not appear from the record that the error complained of was calculated to injure the rights of appellant and neither does it appear that appellant has not had a fair and impartial trial.

Appellant asserts that the trial court committed error in permitting the state to prove, over his objection, the details of the shooting of McAlpine and the wife of the said McAlpine. We are unable to agree with appellant that this testimony was inadmissible. Underhill on Crim. Ev. (3rd Ed.), Sec. 152, lays down the rule applicable here as follows:

"If several crimes are intermixed or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, either direct or circumstantial, of any one of them cannot be given without showing the others, evidence of any or all of them is admissible against a defendant on trial for any offense which is itself a detail of the whole criminal scheme."

That the killing of McAlpine and the shooting of the wife of McAlpine both grew out of the same transaction and were practically contemporaneous is clearly shown by the evidence. The crimes were intermixed and blended with one another and so connected that they formed an indivisible criminal transaction. Proof of the killing of ·McAlpine and the shooting of his wife was a part of the res gestae of the killing of Junek. See Branch's Ann. P. C., Sec. 2347, and authorities cited therein; also see Nichols v. State, 260 S. W. 1050.

There are numerous other complaints contained in the record which we will not undertake to discuss. However, we have carefully examined every contention made by appellant, with the result that we have reached the conclusion that no reversible error is reflected by the record.

Finding no error, the judgment is affirmed.

·   *Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant devotes many pages of his motion for rehearing to a most persuasive argument presenting the contention that the court was in error in disposing of appellant's criticism of paragraph 12 of the court's charge. Appellant's premise is that said paragraph is .in direct contradiction of other portions of the charge and that therefore our opinion is not in harmony with Barbee v. State, 58 Tex. Crim. Rep. 129, 124 S. W. 961, and Henry v. State, 54 S. W. 592, and contrary to the principle announced in LeMasters v. State, 81 Tex. Crim. Rep. 577, 196 S. W. 829. We cannot regard the criticised charge as being in direct contradiction of other portions of the instructions. It is not aptly worded and standing alone might be misconstrued; but the charge must be considered as a whole. (See note 158, Art. 658, Vernon's C. C. P., Vol. 2, p. 252.) In giving effect to Art. 666, C. C. P., it is the duty of this court to have in mind all the evidence and the instructions of the court in its entirety, and from all these try and reach a fair conclusion as to whether some portion of the charge which may · be subject to criticism was calculated to injure the rights of appellant. It is manifestly impracticable to set out in the

opinion all the evidence or all the instructions; the best we can hope to do is to state our deliberate judgment after considering the entire record. A further painstaking examination of the facts and the charge confirms us in the belief that the view of the matter expressed in our original opinion is correct.

We think the Collins case (299 S. W. 403), cited in our former opinion, controls the point made upon the court's definition of malice. The jury could not have been confused upon the issue that the offense might have been manslaughter, although the killing was intentional. The court pointedly told the jury that if appellant in a passion aroused by adequate cause shot at deceased "with intent to kill him" he would only be guilty of manslaughter.

At the same time Junek was killed and as a part of that same transaction, appellant also killed McAlpine and wounded Mrs. McAlpine. Appellant was on trial for killing Junek. He again urges that details of such killing, and of those incident to the killing of McAlpine, and the wounding of the latter's wife, and proof of the wounds inflicted on the two latter parties, and the surroundings and conditions immediately following the tragedy at the place of the killing, should not have been admitted because prejudicial to the appellant because the killing of Junek was admitted to have been unlawful. This same contention in principle was made in Simpson v. State, 97 Tex. Crim. Rep. 57, 263 S. W. 273, but was not sustained.

We have again examined with patience all the questions presented in appellant's motion. In some instances the state's inquiry may have extended with unnecessary particularity into some questions, but we find nothing which to our minds would justify the court in ordering a reversal.

The motion is therefore overruled.

*Overruled.*

### ON APPLICATION FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

LATTIMORE, JUDGE.—In asking leave to file second motion for rehearing, appellant sets out at length certain complaints which were in his original motion, and were considered and deemed not such as to call for reversal and which were not discussed in detail in the opinion overruling the motion. Proof of the relative size and strength of the parties to a homicide is ordinarily admissible in behalf of either party in a prosecu-

tion therefor. Ruling Case Law, Vol. 13, p. 822. While in some cases such proof upon the whole facts might be deemed irrelevant, it seems to have been generally held not of reversible effect. Taylor v. State, 41 Tex. Crim. Rep. 148; Lundy v. State, 59 Tex. Crim. Rep. 131; Patterson v. State, 87 Tex. Crim. Rep. 95. In fact, we know of no case in which the admission of such testimony has been held sufficient to call for a reversal. In the instant case some time during the trial and before the evidence closed, the court admitted testimony showing that appellant was larger and heavier than deceased. Apparently, being of opinion when the testimony closed, that no issue had been developed to which such evidence was relevant, the court instructed the jury not to consider said testimony. The fact of the giving of such instruction has been held in numerous cases to cure the error, if any, of the admission of the testimony. In Miller v. State, 31 Tex. Crim. Rep. 609—a death penalty case, and in which case the admission of matter seemingly much more hurtful than that now complained of—it was held not cause for reversal, the court having instructed the jury not to consider the testimony. In Hatcher v. State, 43 Tex. Crim. Rep. 237, the rule seems to be laid down that only when the admitted testimony is of such damaging character as to suggest the impossibility of withdrawing the impression made by same, from the minds of the jury, would same be cause for reversal. To the same effect is Martoni v. State, 74 Tex. Crim. Rep. 90. The cases cited in appellant's application relate to matters of much greater import to the accused than that here involved. That one accused of murder who pleads not guilty to the charge, but, as appears in the instant case, in that connection offers to plead guilty to manslaughter—may not thus restrict or prevent the state from the full development of all material facts in the case, seems sound, the shooting of a woman in the same transaction in which the instant homicide occurred, and the conduct of the parties at the time, would be res gestae and provable. We deem the testimony of the finding of blood, etc., under the head of deceased, which was brought out in the development of the res gestae, not subject to complaint.

Regretting that we may not respond to the application, same will be denied.

*Application denied.*