## H. PEMBERTON v. THE STATE.

### No. 4598. Decided March 10, 1909.

**1.—Assault to Murder—Continuance.**

Where upon trial for assault to murder the testimony of the absent witnesses as set out in defendant's first application for continuance was too remote, and besides one of the absent witnesses testified in the case there was no error. Following Ex parte Kunde, 22 Texas Crim. App., 418.

**2.—Same—Evidence—Related Circumstances—Incidental Facts.**

Where upon trial for assault to murder the testimony showed that the injured parties were asleep in bed at the time they were shot, and that shot of different sizes was found in the bed clothing as well as in the bodies of the injured parties, there was no error in admitting testimony that a certain piece of lead was found on the foot of the bed on which the prosecuting parties slept, the next morning after the shooting.

**3.—Same—Evidence—Expert Opinion.**

Where upon trial for assault to murder the State's witness qualified as an expert, there was no error in admitting his testimony that he examined the defendant's shotgun the next day after the shooting, and that the same showed that it had been recently fired.

**4.—Same—Evidence—Imputing Crime to Another.**

Upon trial for assault to murder there was no error in excluding testimony that another party lived near the scene of the shooting; that there was bad feeling between said party and the parties injured, and said third party was away from his home on the night of the shooting, and became embarrassed when asked where he was that night, etc.

**5.—Same—Argument of Counsel.**

Where upon trial for assault to murder the State's counsel used extreme illustrations in enforcing the fact that the evidence authorized a conviction of the defendant, there was no ground for reversal.

**6.—Same—Sufficiency of the Evidence.**

Where upon trial for assault to murder the evidence showed that the injured parties were shot at night while asleep in bed and one of them positively identified the defendant as the person who did the shooting, etc., the conviction was sustained.

Appeal from the District Court of Jack. Tried below before the Hon. J. W. Patterson.

Appeal from a conviction of assault to murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Nicholson & Fitzgerald,* for appellant.—On question of continuance: Proctor v. State, 65 S. W. Rep., 368; Smith v. State, 44 Texas Crim. Rep., 53, 68 S. W. Rep., 267; Goldsmith v. State, 46 Texas Crim. Rep., 556, 81 S. W. Rep., 710. On question of argument of counsel: Murmutt v. State, 67 S. W. Rep., 508; Crow v. State, 33 Texas Crim. Rep., 264, 26 S. W. Rep., 209.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of assault to murder and his punishment assessed at confinement in the penitentiary for five years.

The facts in this case show, in substance, that appellant owned a farm in Jack County and had rented the same or part thereof to Will Camp and his wife, the injured parties. One Sunday night after 12 o'clock, while Camp and his wife were sleeping in their bed, some one from a window shot into the room, wounding both Camp and his wife. The shots appeared to have been on a line with the bed entering from the foot, passing up between Camp and his wife, wounding one in the right side and the other in the left side. They were both asleep at the time, lying upon their backs. Mrs. Camp identifies appellant as the man who did the shooting. When the shot or shots were fired, Camp and wife jumped up, ran into a small side room and Camp rushing on out, ran over to where a man named Cody lived. As he passed out at the gate he passed appellant, who had a gun, and halloed back to appellant that he was going after a doctor. Will Camp says that appellant stated, as he, witness, started to leave the room, "I be damned if I don't finish the job," and this statement of appellant scared him and he ran off. After Will Camp left the place, appellant administered to Camp's wife as best he could, binding up the wounds. She swears positively an unequivocally that appellant shot her; that she saw him standing at the window when he did so. There are some contradictions of her testimony in the record. Some testimony to the effect that she did not know who shot her. The physical facts somewhat contradict her testimony also, but these questions have been passed upon by the jury.

Bill of exceptions No. 1 shows that appellant made his first application for continuance which states, among other things, that this is a prosecution against him for assault with intent to murder, said offense being alleged to have been committed on the night of the 24th day of August, 1908; that on Monday, August 25, 1908,

defendant was arrested and placed in the county jail at Jacksboro, Texas, and has been so confined ever since. Defendant further states that the facts complained of in the indictment, alleged to have occurred at 1 o'clock of the morning of the 24th day of August, 1908, at the house of appellant; that the only persons present at said time and place to testify in this case were the injured parties, Will Camp and his wife, and a small boy and the appellant; that the said witnesses Will Camp and his wife have not yet recovered from the injuries inflicted upon them at the said time; that the said witness Mrs. Camp has not yet sufficiently recovered to be able to sit up all the time, and that the wounds received from said gun shot are not yet healed and she is yet weak, pale and emaciated; that she is unable to stand the ordeal of a rigid cross-examination, such as defendant in this case has a right to; that she is still under the treatment of the doctor, and no longer than yesterday, September 15, had a doctor visit her and administer to her ailments and afflictions; that her condition and appearance upon the witness stand would greatly prejudice the rights of appellant before the jury and would tend to and would inflame their passions and prejudices against him; that it would be unjust and inequitable to require defendant to go to trial at this term of court. Furthermore, that the offense herein charged was of such recent origin that the minds of the jurors of the county had not sufficiently recovered from the shock and horror of such an offense as to calmly, coolly, fairly and justly weigh the facts and circumstances connected therewith as to give the defendant herein that fair and impartial trial contemplated by the Constitution and laws of Texas. Furthermore, that he can not go to trial for the want of the testimony of F. W. Comstock, Frank Comstock, Mrs. M. J. Deck, Mrs. Cody, all of whom are very material and important witnesses to the defendant herein and all of whom reside in Jack County, Texas. Upon the point of diligence appellant shows that on the 11th day of September, 1908, he applied for and had issued a subpoena for the witnesses; that said subpoena was duly served by a proper officer of Jack County, Texas, on said witnesses. That defendant expects to prove by the witness W. F. Comstock that he resided near the home of defendant, and was well acquainted in that community; that he knew of a bad feeling that existed between the defendant and one Jim Deck and one A. L. Standard, and certain other parties in that community; that he knew of certain threatening letters, cards and communications that had been sent through the United States mail to defendant; that these parties had threatened to take the life of the defendant in the night-time if he did not leave the community; that these parties had told him that they expected to take the life of the defendant or injure him by shooting him some night while he was asleep at his home. That defendant expected to prove by the absent witness Frank Comstock that he was the first person

to arrive at the house where the shooting occurred after the shooting; that he had a conversation with prosecuting witness, Mrs. Camp, and that in said conversation he inquired of the said Mrs. Camp if she knew or had any idea who did the shooting, and that in reply thereto she stated to him that she did not know. That defendant expected to prove by the witness that he found defendant and said prosecuting witness and her little boy at said house where the shooting was done; that the defendant was administering to her wounds, caring for and looking after her and that defendant was the only one that remained with her after the shooting the remainder of the night and that they seemed to be on the best of terms; that said witness knows of an ill-feeling that then existed between the defendant, Jim Deck, A. L. Standard and Albert Prevo; that he was present when defendant received a threatening letter through the mail. That defendant expected to show by Dr. Greer that he is a regular practicing physician and that as such he was called on the morning of the 24th of August, 1908, to the home of Mr. Cody to dress the wounds of the witness Will Camp; that he examined said wounds and that they were made by a gunshot; that the shot ranged from the hip towards the face and head of said prosecuting witness. That he expects to prove by Mrs. Deck a bad feeling existing between appellant and Jim Deck, A. L. Standard, Albert Prevo and Charlie Comstock; that the said Jim Deck wanted to get possession of defendant's property. That he expects to show by Mrs. Cody that Will Camp came to her house and said that he did not know who did the shooting. That he verily believes and understands that Will Camp and his wife will testify that he (appellant) did the shooting. Frank Comstock testified in the case. There is no merit in this motion for continuance. The absent testimony is too remote. See Kunde v. State, 22 Texas Crim. App., 418.

Bill No. 2 shows that the State proved by Dr. Ledbetter that he found a certain piece of lead on the foot of the bed on which the prosecuting witnesses slept the next morning after the shooting occurred, and the witness also exhibited said piece of lead; that said piece of lead was a flat piece of lead, very much battered and old. Appellant objected to the same, because it was not shown that said piece of lead ever touched either of the prosecuting witnesses, or that the same was fired from appellant's gun or that appellant ever had any connection therewith. This testimony was admissible. The testimony shows that shot of different sizes was found in the bed clothing as well as in the bodies of the man and his wife. The mere fact that this particular piece of lead did not enter the bodies but was found on the clothing of the bed would not render it inadmissible.

Bill No. 3 shows that the State proved by J. S. Newman that he examined appellant's shotgun the next day after the shooting occurred; that the same showed to have been recently fired, to which

counsel for appellant objected because it was a conclusion and an inference of the witness and prejudicial to appellant, and invaded the province of the jury, in that the facts upon which the witness based said inference and conclusion should have been stated and the jury have been allowed to draw their own conclusion. The record shows that the witness qualified to testify and the testimony was admissible.

Bill No. 4 shows that appellant offered to prove by the witness Ed Brown that he lived in the neighborhood and near appellant's home; that one Charlie Comstock also lived near appellant's home, where the shooting occurred; that there was bad feeling existing between prosecuting witness and said Charlie Comstock; that said Charlie Comstock was away from his home on the night of the shooting, and that on being asked by said witness where he was at the time of the shooting, said Comstock became very much embarrassed and excited and finally answered that he was at the home of one Deck; that said witness knew that he was not at said Deck's home when the shooting occurred; that said witness would have testified to all of said facts. State's counsel objected on the grounds that same was hearsay and immaterial. There was no error in the ruling of the court.

Bill No. 5 shows that State's counsel in his closing argument used the following language: "Gentlemen of the jury: Are you going to turn this defendant loose? If you do not convict the defendant in this case, then you had as well close the doors of justice, burn up the law books, tear down the courthouses and let anarchy reign in this country." To which counsel for appellant objected because said remarks were outside of the record, highly prejudicial to the rights of appellant, were inflammatory and well calculated to, and did excite and inflame the prejudices and passions of the jury against appellant. That the court refused to reprimand counsel for making the remarks and refused to instruct the jury not to consider same. The above is a pretty strong statement to make in argument, that justice should be dispensed with and the courthouses burned up rather than to turn the appellant loose or rather than find appellant not guilty, but we would not be justified in reversing cases because State's counsel use extreme illustrations in enforcing the fact that the evidence authorizes the conviction of a defendant.

Appellant's counsel strenuously insist that the evidence is insufficient to support this verdict. We have carefully reviewed all of the evidence and must say that we believe the jury were amply warranted in their verdict.

Finding no error in the judgment the same is in all things affirmed.

*Affirmed.*