## EMMETT GUSTERS v. THE STATE.

### No. 5753. Decided March 31, 1920.

**1.—Murder—Accomplice—Charge of Court.**

Where, upon trial of murder the evidence raised the issue of accomplice's testimony, a failure to charge thereon was reversible error.

**2.—Same—Co-defendants—Rules Stated.**

Where parties are jointly indicted and one of them turns State evidence or testifies for the State, the court should submit a charge presenting the question of accomplice's testimony, although the witness so jointly indicted may deny participation in the homicide. Following: Thomas v. State, 65 Texas Crim. Rep., 374, and other cases.

**3.—Same—Argument of Counsel—Reversible Error.**

Where, upon trial of murder State's counsel travelled outside of the record, saying: "Let's call a halt. There are too many murders committed in this county, etc." The same was reversible error.

**4.—Same—Evidence—Other Transactions.**

Upon trial of murder it was not permissible to show the manner in which the body of deceased was buried, or that he was a pauper buried at the expense of the county.

Appeal from the District Court of Wharton; tried below before the Honorable M. S. Munson.

Appeal from the conviction of murder; penalty, sixty years imprisonment in the penitentiary.

*Geo. P. Willis & S. F. Rowan*, for appellant.—On question of charge on accomplice's testimony: Williams v. State, 42 Texas 392; Thomas v. State, 147 S. W. Rep., 262.

On question of argument of counsel: Stevison v. State, 89 S. W. Rep., 1072; Graham v. State, 123 S. W. Rep., 691; McIntosh v. State, 213 S. W. Rep., 659.

*Alvin M. Owsley*, Assistant Attorney General for the State.—On question of accomplice's testimony: Johnson v. State, 162 S. W. Rep., 512; Perry v. State, 155 S. W. Rep., 365.

DAVIDSON, Presiding Judge.—Appellant was convicted for kill-ing Thomas Bailey. All of the parties are negroes. Bailey came to his death in a bed in a house where he had been sleeping with a negro woman during the night preceding the homicide, which is supposed to have occurred about daylight or a little afterward. George Davis slept in the same house with another negro woman. Appellant slept across the street at a different house with a negro woman. There were several witnesses sleeping in both houses, all of whom testified. The evidence is that Bailey killed the woman he was sleeping with, by cutting her throat and that his throat was cut in the same way. A negro woman testified for the State that George Davis killed Bailey. She and other witnesses in that house, except George Davis, testified that appellant was not present but at another house across the street; that they went over, woke him and notified him of what had occurred; that he got up, dressed and went over to the place of the homicide. All witnesses in the house where appellant slept testified also to facts showing an *alibi*. Davis testified that he saw appellant kill Bailey by cutting him with a knife; that he was standing close by when it oc-curred. The grand jury indicted appellant and Davis jointly. When the case was called for trial Davis applied for a severance, which was granted, and appellant was placed upon trial, resulting in his con-viction with a penalty of sixty years in the penitentiary. Appellant by the witnesses except Davis proved an *alibi*. Davis testified that ap-pellant killed Bailey; that he was present, standing near by at the time but denied participation in the homicide. There is testimony also showing that Bailey had been keeping as his mistress the woman he killed, and had had difficulties and troubles with her, had assaulted her previously, and had threatened to kill her. When advised not to do so, and that he might be hung, his statement was to the effect that they would not punish him, that when he killed her he would kill himself. Under the circumstances if appellant or Davis did not kill Bailey, then Bailey committed suicide. Without going into details of the statements, the testimony being voluminous, this would sug-gest the following theories, to-wit: first, that deceased committed suicide; second, that by the testimony of Davis appellant killed de-ceased, and, third, by other testimony that Davis killed deceased. The State evidently followed the idea that Davis and appellant were joint-ly interested in the killing, and so believing indicted them jointly for the homicide. Davis was used by the State as a witness.

The court failed to charge the jury with reference to the law of accomplice testimony, to which exception was properly taken and special requested instructions refused by the court presenting the theory of Davis being an accomplice and the law applicable to ac-complice testimony. We are of opinion that the court should have charged the law applicable to accomplice testimony and the neces-sary corroboration. The court did charge upon the theory of *alibi*, but did not charge upon the theory of suicide. Where parties are

jointly indicted and one of them turns State's evidence or testifies for the State, the court should submit a charge to the jury presenting the question of accomplice testimony and necessary corroboration, although the witness so jointly indicted may deny participation in the homicide. Williams v. State, 42 Texas, 392; Kelly v. State, 1 Texas Crim. App., 638; Thomas v. State, 66 Texas Crim. Rep., 374. In the Thomas case, supra, many cases supporting this proposition are collated. Without specifying those cases in this opinion the Thomas case is referred to for a list of said cases. We think the court was in error in not submitting the law of accomplice testimony.

Exception was reserved to statements made by one of State's counsel in which the following language is quoted: "Lets call a halt— There are too many murders committed in Wharton county. The records of this county show that six murders have been committed in Wharton county within the last six months, and four within four miles of the courthouse." There was no evidence, so far as the record is concerned, showing that these matters were before the jury, and in fact it would not be proper for the State to have so shown. Upon another trial remarks of this character should be avoided.

There is another bill of exceptions which recites that Crockett testified he drove what is known as the "Beggars wagon," that he buried people, and did not bury anybody except paupers; that he works and buries paupers for the county, and the county pays for it; that he buried the man found at the house where the man and a woman had been killed about the 6th of October; that he had a county coffin; that he did not find anything there to bury him in; that he looked in the room where he was and did not see anything; that if there was a suit of clothes laying on the table or on the chairs he would have seen it, and that he did look for something to bury him in, and not finding this he wrapped the body up in one of the bloody sheets that was lying on the bed and put him in the coffin; that he was buried in that way. We are of opinion this testimony should not have gone to the jury. It could not affect appellant's guilt or innocence, and it was not permissible to show the manner in which the body was buried, or that he was a pauper buried at the expense of the county, under the circumstances detailed. Appellant was not present when any of these things occurred. If he participated in the killing he was not there at the time mentioned by Crockett, and was not responsible for the manner of deceased's burial by the county. What effect this had upon the jury would be conjectural, and speculative, but the jury allotted appellant sixty years in the penitentiary for murder when they could have fixed the punishment at the minimum of five years. This testimony should not be permitted to go to the jury upon another trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*