ALFRED SIMPSON v. THE STATE.

No. 8025. Decided March 5, 1924.

Rehearing denied June 11, 1924.

**1.—Murder—Call of Docket—Discretion of Court.**

This court must re-affirm the rule that the order of calling dockets is largely discretionary with trial courts, and their actions will not be revised, unless injury be made apparent, and no injury being shown in the instant case, there is no reversible error. Following Moore v. State, 251 S. W. Rep., 1086.

**2.—Same—Motive of Homicide—Evidence.**

Where, upon trial of murder, the State's theory of the homicide was an acting together of appellant and one Rambin with the ulterior purpose of the appropriation of the property of deceased, and there was, therefore, no error in the admission of testimony that said Rambin had purchased a half interest in said property, but had not paid for it, and that he took it into his possession after the homicide, and that appellant claimed after the homicide to have purchased an interest in said property, etc.

**3.—Same—Evidence—Declarations of Co-conspirator.**

The complaint that the widow of deceased was allowed to testify that two days after the disappearance of her husband she had a conversation with defendant's companion Rambin about deceased, presents no reversible error, nor does the testimony of the witness Parrish as to a conversation had with said Rambin.

**4.—Same—Evidence—Bloody Articles.**

Upon trial of murder, there was no error in admitting testimony that blood was on a car spring found in the car of deceased after his death and that deceased's body wired to poles was found in the bottom of the lake, and that when it was found there was no flesh on his face and head.

**5.—Same—Evidence—Exculpatory Declarations.**

Where it was contended on behalf of appellant that the State having introduced certain declarations by defendant was bound by it, and that the jury should have been told that such was the law, but the record showed that no proof of the truth of the statement by appellant to the witness was made, but its falsity was overwhelmingly shown, there is no reversible error. Following Slade v. State, 29 Texas Crim. App., 381, and other cases.

**6.—Same—Argument of Counsel.**

Whether there was no statement of the harmful fact otherwise unknown to the jury, nor the use of any language which degenerated into personal abuse, there is no reversible error.

7.—Same—Accessory—Principal.

Where appellant urged that while there is much evidence which might go to establish his guilt as an accessory, the proof did not support his guilt as a principal, but the record showed that there was such proof and that the trial judge, both in the main charge and the requested charge submitted this issue, there is no reversible error.

8.—Same—Charge of Court—Principal.

Where, upon trial of murder, the court submitted a full and correct charge on the law of principals applicable to the facts in the case, there is no reversible error.

9.—Same—Rehearing—Confession.

Where, upon trial of murder, the appellant's confession in which he advanced the theory of innocent presence in the commission of the offense and forced. participation in disposing of the property and body of the deceased, and the court submitted this phase of the case in a correct and full charge, and also on the question of circumstantial evidence and principals, alibi, etc., there is no reversible error.

10.—Robbery—Murder—Calling Docket—Discretion of Court.

Appellant's position that there could have been no conviction of robbery is not deemed sound. The facts might have warranted a conviction for either robbery or murder, and where the cases were called within the judicial discretion of the trial judge, and no abuse of discretion was shown, there was no reversible error.

11.—Same—Bill of Exceptions—Practice on Appeal.

The recital in the bill of exceptions so far as they are mere recitals, not verified, cannot be considered on appeal. Following Conger v. State, 63 Texas Crim. Rep., 326.

12.—Same—Severance—Practice in Trial Court.

That a severance in the robbery case would have resulted in the trial of the co-conspirator Rambin, first, or the acquittal of the appellant appears but speculative, as are the other contentions made by the appellant, and there is no reversible error. Following Morgan v. State, 82 Texas Crim. Rep., 616.

Appeal from the District Court of Panola. Tried below before the Honorable Chas. L. Brachfield.

Appeal from a conviction of murder; penalty, fifty years imprisonment in the penitentiary.

The opinion states the case.

*Russell & Seale,* and *C. C. Denman,* for appellant.

*Tom Garrard,* Attorney for the State, and *Grover C. Morris,* Assistant Attorney for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Panola County of murder, and his punishment fixed at fifty years in the penitentiary.

We give below the substance of the testimony for the State. On the night of May 25, 1922, Dr. A. L. Parrish disappeared. He lived at Garrison in Nacogdoches county. On June 30th following his body was found wired to some poles in the bottom of Wanderlust Lake about two and one half miles from Garrison. A bullet hole in one part of the skull and a fracture from a blow on another part, each indicated what was thought to be fatal wounds. When last seen alive, the night of his disappearance, deceased was in his own car with appellant and one Rambin. The next morning appellant and Rambin drove the car of deceased to a garage in Livingston some eighty miles from Garrison, told the garage man to reline the brakes of the car, that they wanted to catch a train. Appellant bought a ticket to Mayotown and while on the train saw Burton Cooper who lived in Garrison and asked him when he got home to telephone the wife of deceased that her husband and Rambin had gone to Haslam front to look for team work. Cooper promised to convey the message. When the automobile at Livingston was identified a bloody car spring was found in it. The surgical case and clothes of deceased were found in the Angelina river between Garrison and Livingston. Rambin and deceased were partners in a teaming business which owned a number of horses, mules, wagons, scrapers, etc. Rambin had bought his interest in said partnership property from deceased, giving a note for several thousand dollars secured by a mortgage, in payment; no part of the note had been paid up to this trial. Appellant worked for the partnership, being employed by Rambin. Shortly after the disappearance of Dr. Parrish, Rambin and a man whom Mrs. Parrish did not know came to the home of deceased and carried away the partnership property which was there. Later a valuable horse belonging to said partnership property was found in the possession of a member of the family of appellant, and was brought to the sheriff. Appellant also told a brother of deceased who was endeavoring to locate him after his disappearance, that he had purchased an interest in said partnership property, but did not disclose when the purchase was made nor on what terms. A statement signed by appellant at his examining trial on a charge of this murder, made after due warning, was introduced in evidence by the State. In same appellant said that on the evening of the homicide and some hours prior thereto Rambin told him he was going to make way with deceased, and that he told Rambin not to do it, that he could not get away with it. He also affirmed in said statement that he, Rambin and deceased reached Nacogdoches in the car after night, stopped about fifteen minutes and then went on toward Garrison, and drove to near the lake mentioned. Deceased was driving the car and appellant sitting on the front seat by him; that here a shot was fired which scared him and the deceased fell on the steering wheel, and that appellant said, "Lord, what will I do" and Rambin said, "You are going to drive this

car," and when he demurred Rambin told him he had to do it, and that the latter pulled the body of deceased from under the wheel and appellant drove the car on up to the lake. That there Rambin pulled the body out, stripped off its clothes and told appellant to help him put the body in the pond. Appellant said he again demurred and Rambin told him he had to help him. They then picked up the body and carried it out to where the water was about waist deep, and that Rambin then floated the body on out in the pond, from which he came back presently to where appellant was; both returned to the car, drove back through Nacogdoches and on to Livingston. When they got to the Angelina river Rambin got out with the surgical case, clothes, etc., of deceased and went toward the river. There was blood on the car and appellant said the scent of it made him sick and he got a bucket of water and Rambin washed the blood from the car. These are the salient facts, though others may be mentioned in discussing the points raised.

For appellant there was some evidence showing his permissive use of the property of the partnership as its employee; testimony of his good reputation; a showing that the man who came with Rambin to the home of deceased a few days after the homicide and carried away the partnership property was not appellant but one Dunn.

Growing out of this homicide three indictments were returned, No. 6692 charging appellant and Rambin jointly with the robbery of Dr. Parrish; Nos. 6693 and 6694 charging Rambin and this appellant separately with the murder. Rambin had been tried in cause No. 6693 and convicted at the time of this trial. The instant case was No. 6694, and when called for trial appellant objected on the ground that cause No. 6692 was first on the docket and that he had a right to demand trial first in it. His contention of injury is that if he had been tried in No. 6692 and acquitted or given a penalty less than fifteen years, he might have effected his release on bail. In Moore v. State, 94 Texas Crim. Rep., 489, we reaffirmed the rule that the order of calling dockets is largely discretionary with trial courts and their actions will not be revised unless injury be made apparent. The injury set up in the case before us is too speculative to be made the basis of a substantial attack on the action of the court below.

The State's theory of this homicide was an acting together of appellant and Rambin in the homicide, with the ulterior purpose of the appropriation of the property of deceased. Evidence that Rambin had purchased a half interest in said property but had not paid for it, and that he took it into his possession after the homicide, and that appellant claimed after the homicide to have purchased an interest in said property, and that a horse which was a part of said property was thereafter in possession of appellant's rela-

tives, no explanation of how he came there being given, all appear relevant and admissible facts, as were the acts of Rambin and the appellant relative to said property and to each other.

Bill of exceptions No. 8 in so far as it attempts to set out complaint that the widow of deceased was allowed to testify that two days after the disappearance of her husband she had a conversation with Rambin about him, presents nothing tangible in that the conversation is not set out nor any part of it. The fact in testimony that Mrs. Parrish had a conversation with Rambin and that it related to her husband, and that it was out of the presence of appellant, presents no error:

Complaint appears of testimony that blood was on a car spring found in the car of deceased after his death; also of the fact that his body was found wired to poles in the bottom of the lake; also of the fact that when it was found there was no flesh on his face and head. It was insisted that appellant having admitted in open court that Dr. Parrish was dead,—that his body was taken out of Wanderlust Lake on June 30th, and that the car found at Livingston was his car, then the admission of the evidence above mentioned would only influence the minds of the jury and arouse their passions. The admissions did not go to the admission of the death of Dr. Parrish by the criminal agency of anyone nor as the result of a criminal act on the part of appellant and Rambin. Blood on a piece of iron found in the car of deceased in which he was riding with appellant and Rambin when last seen alive, the shape of which iron corresponded with the fracture in the skull of deceased when found, was a direct circumstance of guilt of homicide as was the fact that the body was wired to poles in the bottom of the lake. Such facts evidenced criminal agency in the death. Should it be admitted that there was no necessity for mentioning the fact that the flesh was gone from the head and face of the body when found, the cases cited by appellant along with many others that might be mentioned are where for some substantial reason a reversal of the case was necessary and this court concluded that there were facts in evidence which served no useful purpose and which upon another trial should not be admitted. Such is the case of Gusters v. State, 87 Texas Crim. Rep., 181. This court often suggests in cases which are reversed for other reasons that evidence be omitted upon another trial the appearance of which would not in the opinion of this court call for a reversal of the case in and of itself. To hold it reversible error for a witness in narrating the finding of the body of one killed, to state that the flesh had slipped off, would tend to lead to such refinement of testimony as that in the end only the naked fact of death,—the means used, and the person inflicting it, could be described in testimony. The attendant circumstances would be microscoped for some expression which could be construed as arousing

the passion of the jury. We think such a condition magnifies the shadow and minimizes the substance.

John Parrish, brother of the deceased and State witness, seems to have made much effort to locate his brother after his disappearance, and on one occasion went out to see Rambin and appellant but only succeeded in seeing the latter. In telling this witness of his movements on the night of the homicide, appellant said that he, Rambin and deceased came from Douglass back to Nacogdoches and that he there got out of the car at the depot and went home, Dr. Parrish and Rambin going on in the car to Haslam front. He said that he walked twelve miles after nine o'clock at night out to his home. It is contended on behalf of appellant that the State having introduced this declaration was bound by it and that the jury should have been told in the charge that such was the law of the case, and that failure to tell the jury that unless the State had shown the falsity of this statement of appellant should call for a reversal. An exception was taken to the court's charge as follows:

"Because the court fails to charge the jury that it is incumbent upon the State to disprove beyond a reasonable doubt the statements alleged to have been made by the defendant to John Parrish to the effect that on the night of May 25th, 1922, he, the defendant, left A. L. Parrish and Jess Rambin at Nacogdoches and went home, and was not present at and did not participate in the killing of A. L. Parrish."

A special charge on this matter was also presented but its refusal was not preserved by separate bill of exceptions or notation of exception by the court on the refused charge. Appellant presents an able argument in support of this contention. Forrester v. State, 93 Texas Crim. Rep., 415, is cited and relied upon. The facts in that case and the authorities cited therein as authority for its holding, are very different from those here and seems to have slight application. There was in said case a confession of connection with the alleged crime which confession was relied upon to connect the accused therewith, and in connection with which confession there appeared exculpatory statements which served to rebut any presumption of criminality in the act admitted to have been done by the accused. Hence our announcement in the opinion. What are the facts in the case before us? From the record we learn that when appellant was arrested and before the magistrate for examining trial, after due warning, he said that when he reached Nacogdoches on the night of the homicide with Rambin and deceased, they drove on together to the point where deceased was killed near the lake; that he there helped dispose of the body of deceased, and then drove all night with Rambin in the car of deceased, leaving it at Livingston the next morning, from which point he took a train to Mayotown and saw Mr. Cooper on the train. Each of

these statements is wholly at variance with the statement which he made to John Parrish. The statements made by appellant in his confession before the magistrate were verified by the testimony of the witness Laroe who saw appellant and Rambin in the car of Dr. Parrish near Livingston on the morning of the 26th of May; by the testimony of Davis at whose garage in Livingston they put the car; by that of Cooper who saw appellant on the train that morning and agreed to deliver a message from him to the wife of deceased. Appellant did not take the witness stand and no witness testified for him that he came home the night of the 25th, or that he was seen anywhere on the road. We have here then a record not only devoid of proof of the truth of the statement made to Parrish but overwhelmingly showing the falsity of it both by the confession of appellant and the other testimony. The rule in such case seems laid down in Slade v. State, 29 Texas Crim. App. 381, which has been approved in numerous later cases. Trevenio v. State, 48 Texas Crim. Rep. 207; Loan v. State, 69 Texas Crim. Rep. 222; Cook v. State, 71 Texas Crim. Rep. 532; Pickens v. State, 86 Texas Crim. Rep. 660; Casey v. State, 54 Texas Crim. Rep. 587. In Pickens case, supra, the present Presiding Judge of this court referred to the Slade case as laying down the rule that the charge mentioned is not required when there is other criminating evidence beside the confession, and especially is this true when the facts of the case establish the falsity of the statements of the accused referred to and relied upon as exculpatory.

Complaint is made in bills of exception Nos. 23 and 24 of argument of the State's attorney. One of said bills complains that he said it was time for juries to meet out justice to such red-handed murderers. In the other complaint is made of the fact that he said appellant's father was the only member of the family who had been solemn during the trial. Referring to the first complaint, we observe that legitimate deductions from evidence are not erroneous even though couched in strong language. He who killed Dr. Parrish did it for gain and was a murderer. The theory of the State, which was found true by the jury, was that appellant was a participant, a coconspirator, a man who aided in the cold-blooded killing of his employer for his property. There is in said argument no statement of a hurtful fact otherwise unknown to the jury, nor the use of language which degenerates to personal abuse. The other complaint needs no discussion.

Appellant urges that while there is much evidence which might go to establish his guilt as an accessory, the proof does not support his guilt as a principal. The learned trial judge, both in the main charge and by special instructions, told the jury that if they found that appellant's connection with the homicide was as an accessory, or if they had a reasonable doubt thereof, they should acquit. It

is also insisted that what was done by appellant was only from fear of Rambin and at Rambin's instigation, but we find him on the train away from Rambin,—the morning after Dr. Parrish was shot and knocked in the head, stripped and sunk in the lake, confessedly in the presence of appellant,—telling Burton Cooper to telephone Mrs. Parrish that her husband had gone to the Haslam front with Rambin.    Ten days after the killing we find appellant,—again out of the presence of Rambin having a conversation with John Parrish and telling him that all he knew of the doctor's whereabouts was what Rambin had told him,—that Rambin had told him that the doctor and another man left for Jacksonville in the doctor's car to go to California.   We find nothing to indicate that appellant's continual consorting with Rambin was not of his own voluntary choice.   He was with Rambin when John Parrish found him and had the conversation above mentioned.   He was with Rambin at White's where they both came up riding one horse and Rambin tried to borrow another so that they could go away from the community until the Parrish matter cooled off.   He was with him at Josephine Yarborough's, both again on one horse, where Rambin tried to borrow another from her for the same purpose as from White. He was with him in claiming an interest in the horses, mules, etc., belonging to the partnership.   One or both being manifestly responsible it would be but natural for appellant when on trial for his life to lay the blame on Rambin, as it would be for Rambin if on trial to lay the blame on appellant.

The theory of principles submitted in the charge called for belief beyond a reasonable doubt on the part of the jury that appellant was present at the time of the homicide and that same was committed in pursuance of a previously formed design in which the minds of the parties united and concurred and that they were acting together at the time.   This correctly announced the law, and while most of the testimony was circumstantial and the case was submitted to the jury on the law of circumstantial evidence, we can not bring ourselves to believe the evidence insufficient to support the conclusion of guilt as a principal.

There are other complaints in the record all of which have received our attention but none of which present reversible error.

The judgment of the trial court will be affirmed.

*Affirmed.*

### ON REHEARING.

### June 11, 1924.

MORROW, Presiding Judge.—In his motion for rehearing appellant forcefully argues that this court was in error in upholding the action of the trial court in departing from the order in which the two cases against the appellant appeared upon the docket.

In cause No. 6692 the appellant, Alfred Simpson, and Rambin were charged with robbery by firearms. In cause No. 6693 Rambin was charged with murder and, upon his trial, was convicted and his punishment assessed at confinement in the penitentiary for a period of ninety-nine years. In the present cause, No. 6694, the appellant was charged with murder. Excepting to the court's refusal to require the disposition of cause No. 6692 in advance of the present case, appellant stated as grounds for exception that in the present case, upon the habeas corpus hearing, bail had been allowed; that in the robbery case bail had been denied; that if cause No. 6692, the robbery case, had been first called, he might have asked for a severance and that Rambin be first tried; that in the event of an acquittal of the appellant of robbery, he might have interposed a plea of former jeopardy; and that even if former jeopardy had not been available, he would have been entitled to make bail in cause No. 6694, the murder case, and thereby be free from embarrassment of enduring the present trial while under arrest. Note is to be taken of the fact that these matters are but recitals of appellant's reasons for complaining of the action of the court. These recitals, however, are urged upon this motion as a demonstration of injury to the appellant. The trial court qualified the bill of exceptions with the statement, in substance, that cause No. 6692 was first called; that the State announced not ready, and the case was passed.

In the appellant's confession, he advances the theory of innocent presence in the commission of the offense and forced participation in disposing of the property and body of the deceased. In submitting his theories to the jury, the learned trial judge is characterized by liberality towards the appellant. He gave a charge on circumstantial evidence and fairly submitted the issue of principals; he charged on alibi and instructed the jury that appellant, though present at the homicide and though he aided in disposing of the fruits of the crime, he should be acquitted unless he, with guilty knowledge of the unlawful intent of Rambin, aided or encouraged the homicide, or agreed in advance that it should take place. In a second special charge upon the same subject, the court instructed an acquittal if the evidence left in the minds of the jury a reasonable doubt as to whether the appellant aided or encouraged Rambin in the commission of the crime, and expressly instructed in an additional special charge that his aiding in the disposition of the body of the deceased would not justify his conviction of murder.

The presence of the appellant at the time that Parrish was killed was conceded by him in his confession. Therein he claimed that without previous agreement upon the part of the appellant, Rambin shot the deceased and forced the appellant to aid in disposing of his property and body. The evidence reveals that two

97 T.

weapons were used in the homicide, namely, a pistol and an iron bar; that at the time the deceased was killed, he was in his own automobile which, after making use of it to deposit the body in the lake, appellant drove to another county and with his companion deposited it in a garage; that the other property found in the possession of the deceased was disposed of.

Appellant's position that there could have been no conviction of robbery is not deemed sound. The facts might have warranted a conviction for either robbery or murder. See Ex parte Jones, 82 Texas Crim. Rep. 13, and authorities there cited. Ordinarily, criminal cases should be called in the order in which they appear upon the docket, but this phase of the procedure is one within the judicial discretion of the trial judge, and his action is to be reviewed only when such discretion is abused. This we understand to be the rule sanctioned by this court. See Nichols v. State, 3 Texas Crim. App. 546; Godwin v. State, 44 Texas Crim. Rep. 603; Wright v. State, 10 Texas Crim. App. 480; Todd v. State, 57 Texas Crim. Rep. 15 and 26; Moore v. State, 94 Texas Crim. Rep., 489, 251 S. W. Rep., 1086; Goodwin v. State, 65 Texas Crim. Rep. 98, 143 S. W. Rep., 939; Shehane v. State, 13 Texas Crim. App., 533.

The recitals in the bill of exceptions, so far as they are mere recitals not verified by the certificate of the judge, or otherwise revealed by the record, cannot be considered as showing injury. Conger v. State, 63 Texas Crim. Rep., 326, and authorities there listed.

That a severance in the robbery case would have resulted in the trial of Rambin first or the acquittal of the appellant, appears but speculative. The same is true of the theory presented in argument that if upon the trial of the robbery case, appellant had been convicted with punishment assessed at fifteen years or less, he might have been released upon bail. The court, as stated above, was not absolutely bound to finally dispose of the cases in the order in which they appeared upon the docket. He was bound at most to exercise sound discretion and to refrain from arbitrary action. It appearing that the State was not ready for trial and that the robbery case was passed upon the order of the court, the presumption in favor of the soundness of his ruling prevails in the absence of facts showing an abuse of discretion. Morgan v. State, 82 Texas Crim. Rep. 615.

The other questions raised in the motion for rehearing have received attention in the original opinion. With the record before us, we are constrained to adhere to the conclusions therein stated.

The motion is overruled.

*Overruled.*