RALEIGH BILBERRY v. THE STATE.

No. 11874.   Delivered January 30, 1929.
Rehearing refused June 26, 1929.

10

The opinion states the case.

*W. F. Cunningham* and *Oliver Cunningham* of Abilene, for appellant.

*Clyde Gresson,* District Attorney of Taylor County and *A. A. Dawson* of Canton, State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is manslaughter; punishment fixed at confinement in the penitentiary for a period of five years.

There was a former appeal from a judgment assessing a like penalty. A report of the decision will be found in 103 Tex. Crim. Rep. 572.

The appellant shot and killed Flurry Gibson. The tragedy occurred at Mt. Olive school house at which there was a gathering of people. About ten o'clock at night the meeting adjourned, and the persons present were leaving the school house. The appellant appeared and accosted Gibson, charging him with either having reported the appellant's possession and operation of a still to the grand jury or threatening to do so. It was known to the appellant that Gibson was a member of the grand jury. Upon Gibson's denying the accusation he was contradicted and cursed by the appellant. This was resented by Gibson and he struck the appellant with his fist.

There was testimony that while in the school house and before the meeting Gibson had an unopened knife in his hand and offered

it to a friend to cut some tobacco, and that after he was killed there was found an unopened knife in his hand.

The appellant did not testify but his presence at the school house was explained by his son, who claimed that he and his father went there in order to see on business one of the school trustees who was also a county commissioner. The son also testified that he and his father had been told that the deceased was threatening and endeavoring to institute prosecution against the appellant and his son for the unlawful manufacture of intoxicating liquor.

Evidence was introduced to the effect that on the day of the homicide one Buttrell had purchased some cartridges for the appellant and at his request. Buttrell claimed that the son of the appellant was present at the time the request was made. This was denied by the son who was introduced as a witness for the appellant.

The defensive theory of self-defense was submitted to the jury with reference to both real and apparent danger. A charge on provoking the difficulty, which was given on the previous trial, was not embraced in the charge on the present trial.

The homicide took place in April, 1924, and in April, 1927, the body of the deceased was disinterred and a bullet extracted from the back where it was lodged near the spine. There was evidence that the cartridges which Buttrell had purchased at the request of the appellant and delivered to him were bought at a hardware store conducted by Charley Gibson, a brother of the deceased. The bullet taken from the body of the deceased was introduced in evidence before the jury. It appeared to have been split or sawed through the middle, which was its condition at the time that it was taken from the body. The State also introduced testimony showing that Charley Gibson was present at the time the body was disinterred, took possession of the bullet which was extracted, and from various peculiarities identified it as of the same character of bullets which he had sold to Buttrell. He also testified that it was of the same character of bullets used in the pistol by the appellant at the time of the homicide. The receipt of the testimony was opposed upon the ground that no issue was made touching the size and location of the wounds upon the body of the deceased or the range of the bullets; that it was irrelevant and especially objectionable as it calculated to inflame the minds of the jury. In qualifying the bill the court states in substance that there was an issue raised by the evidence touching the reason or motive which caused the appellant to go to the school house on the night of the homicide. Whether the appellant went to

the school house where the homicide took place for the purpose of meeting and killing the deceased or whether he went there on business and the meeting was incidental was an issue of fact for the solution of the jury. To enable the jury to determine the matter it was competent that the State introduce relevant testimony bearing upon the issue. It was in evidence that the deceased was a member of the grand jury; that he had declared his intention and desire to prosecute the appellant for violations of the law against the manufacture of intoxicating liquor; that the appellant knew of this and was incensed because of it; that he took no part in the assembly at the school house but appeared at the end of the meeting and opened a quarrel with the deceased, accusing him of attempting or threatening a prosecution of the appellant. The denial by the deceased was followed by abusive language on the part of the appellant. When this was resented, the appellant's weapon was ready and promptly used. If the State could prove that with the resentment engendered by the threatened prosecution the appellant purchased cartridges and armed himself before going to the school house where the deceased was killed, it was competent proof; and the fact that one of the bullets which entered the body of the deceased was one of those which was purchased by Buttrell for the appellant shortly before the deceased was killed is deemed to have been relevant upon the issue. When relevant to a controverted issue, the admissibility of bullets taken from the body of the deceased is affirmed by text-writers and judicial decisions. In Underhill's Crim. Ev., 3rd Ed., Sec. 494, it is said:

"The state may introduce in evidence the weapon with which it is charged the homicide was committed, if it is properly identified as belonging to the defendant, or bullets taken from the body of the deceased, or cartridges of the caliber of a rifle apparently carried by the accused in his flight after the crime and found on a highway some distance from the scene of the crime, or a bullet of the size and caliber of the pistol owned by the accused and found near the scene of the crime, or any weapon found in the possession of the accused or his criminal associates, which is similar in form and character to that which was employed."

Among the Texas cases cited under the text are Pemberton v. State, 55 Tex. Crim. Rep. 464, 117 S. W. Rep. 837; Wheeler v. State, 61 Tex. Crim. Rep. 527, 136 S. W. Rep. 68; Hickey v. State, 51 Tex. Crim. Rep. 230, 102 S. W. Rep. 417; Hickey v. State, 62 Tex. Crim. Rep. 568, 138 S. W. Rep. 1051; Rodri-

quez v. State, 32 Tex. Crim. Rep. 259, 22 S. W. Rep. 978; Granger v. State, 31 S. W. Rep. 671. In homicide cases the preparation is admissible. Underhill on Crim. Ev., supra, sec. 517, and cases in note 30, among them being Woods v. State, 87 Tex. Crim. Rep. 354. Conceding the bullet taken from the body of the deceased to be material upon an issue in the case, it would not seem important whether the bullet was extracted before the burial of the deceased or subsequent thereto.

In the brief of counsel, appellant contends that the bullet should have been excluded on the reasoning which has controlled the court in various instances in which the bloody apparel of the deceased has been rejected. The analogy of the exhibition of the bullet with the display of bloody clothes is not perceived. However, the bloody apparel of the deceased in a homicide case is not to be excluded if it is material to the solution of a controverted or doubtful question. See Underhill on Crim. Ev., 3rd. Ed., sec. 101, note 89; Adams v. State, 48 Tex. Crim. Rep. 452; Boyd v. State, 50 Tex. Crim. Rep. 138; Ozark v. State, 51 Tex. Crim. Rep. 106; Trigg v. State, 99 Tex. Crim. Rep. 376. It may be added that where the evidence of guilt is sufficient to support the finding of the jury and the result of the trial gives no indication that it was produced or affected by prejudice, such testimony when improperly received, is not regarded as sufficient ground for a reversal. Long v. State, 48 Tex. Crim. Rep. 179; Hughes v. State, 252 S. W. Rep. 774; Trigg v. State, supra.

Counsel for the appellant makes reference to the cases of Gray v. State, 55 Tex. Crim. Rep. 90, 144 S. W. Rep. 635, and Shields v. State, 231 S. W. Rep. 779, on the subject of exhuming the body of one deceased. The case of Johnson v. State, 293 S. W. Rep. 173, also deals with that matter. In each of the cases the court asserts the power of the district court in a homicide case to order the body disinterred, and under proper conditions it is its duty to do so. In Gray's case, supra, a reversal of the conviction was ordered because the trial court refused to make such an order. The purpose of the disinterment is that evidence may be acquired thereby and used on the trial with the view of ascertaining the truth in the administration of justice. It is eloquently asserted and forcefully argued in Gray's case, supra, that justice to the State and to the accused at times requires that sentiment yield and that the secret which the grave holds become known. It is true and right that the body should not be disturbed save for exceptional reasons. The present, however, is

not a case in which the court is called upon to force an examination of the body after interment over the opposition of the friends of the deceased, but it is one in which the examination was made without objection; and the examination when so made and the result disclosed thereby are proper matters of evidence. The cases cited by the appellant make manifest the propriety of receiving the testimony.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In appellant's motion for rehearing is found the following statement:

"It is not appellant's contention that the testimony in regard to the size and character and sawed condition of the ball taken from the deceased was such error as required a reversal of this case, * * * but it was the contention of the appellant in the lower court and is his contention now that the facts of this case raise no issue that' would justify the state in taking up the body of the deceased, taking the bullet therefrom and not only permit the witness to testify before the jury as to the size and sawed condition of the bullet, but permit them to go further and exhibit to the jury and let the jury handle, examine and look at the bullet for themselves."

We do not care to discuss again the question of the exhuming of the body of deceased and securing therefrom the bullet; that matter seems sufficiently disposed of in our original opinion; neither do we attach any importance to the fact that the proof as to the bullet was made by the state after both the state and appellant had rested their case. The strict rule regarding rebuttal testimony is not enforced in this state in the trial of criminal cases. If evidence regarding this bullet would have been admissible if offered by the state in developing its case in chief the order in which it was introduced does not alter the question. However, appellant contends that the evidence was inadmissible because it elucidated no issue in the case. The principle announced in Underhill's Crim. Ev., 3d Ed., sec. 494, and copied in our original opinion has been given general application in our court as illustrated by the cases cited in said opinion. As we understand it the state, unless under most unusual circumstances, may in making out its case introduce the weapons with which the crime is committed and the bullets found in deceased's body. Questions similar to that here raised by appellant were discussed in Simp-

son v. State, 97 Tex. Cr. R. 57, 263 S. W. 273; Smith v. State, 104 Tex. Cr. R. 567, 285 S. W. 1094; Claxton v. State, 109 Tex. Cr. R. 345. We see nothing in the present case to take it out of the general rule.

It is appellant's further contention that even if the evidence regarding the bullet and the bullet itself was admissible, it was error to permit the jury to handle and examine the bullet. If it was properly admitted in evidence the question last raised seems not difficult to determine. In Smith v. State, 90 Tex. Cr. R. 24, this court said:

"After retirement the jury requested the pistol which had been introduced in evidence for their examination in their deliberations upon the case. Appellant objected to this as shown by his bill No. 23. The bill does not undertake to show that the pistol was used by the jury for an improper purpose, or that any additional fact was discovered by them upon its examination. Unless it is made to appear that the articles which are in evidence, and taken to the jury room, were used by the jury in any different manner than accorded with the testimony, or that some new fact hurtful to appellant was thereby discovered, the matter will not be revised on appeal. Such has been the holding of this court, even when the bloody clothing of deceased was properly in evidence, and taken by the jury to their room. Bell v. State, 32 Texas Crim. Rep. 436; Spencer v. State, 34 Texas Crim. Rep. 238; Chalk v. State, 35 Texas Crim. Rep. 116; Grayson v. State, 40 Texas Crim. Rep. 573; Webb v. State, 69 Texas Crim. Rep. 413, 154 S. W. Rep. 1013."

Certainly if the jury could have taken the bullet with them in retirement and no error be thereby committed in the absence of a showing of improper use of it, there would be no basis for holding that a mere handling and examination of the bullet by the jury would present an error calling for reversal.

The motion for rehearing is overruled.

*Overruled.*