KELLY HARRIS v. THE STATE.

No. 12052. Delivered December 12, 1928.

The opinion states the case.

*Ray Baskin* of Cameron for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MORROW, Presiding Judge.—The offense is murder; punishment fixed at confinement in the penitentiary for a period of five years.

The appellant and the deceased, Ford, were negroes. A short time prior to the tragedy, Ford and his wife separated. The appellant claimed that he was unaware of the separation. On the day of the homicide, he went on business to the home of a neighbor of Ford and while there engaged in a conversation with Ford's wife. There was testimony that sometime prior to the homicide the appellant heard Ford declare that some one was interfering with his family affairs and that he would kill the person if he could ascertain who he was. There were several persons present at the time the fatal blow was struck.

According to the testimony of Lindford, an eye-witness, upon hearing the word "lie" used, he looked around and saw the appellant (holding a knife), draw his hand back and strike Ford twice with the blade of the knife, first striking him in the breast and next upon the arm. At that time the witness saw no knife in the hand of the deceased. After the blows were struck, the deceased walked off some distance, drew a knife from his pocket, opened it and started in the direction of the appellant. The latter picked up a brick, threw it at Ford and struck him in the breast. The two never got within an arm's length of each other after Ford was struck with the knife. After walking about sixty yards, Ford fell and in a few moments thereafter died from the wound in his breast. The blade of Kelly's knife was about four or five inches long.

The testimony of the witness Jamison was not in substance different from that of Lindford, save that before the fight, Jamison saw the appellant and deceased together and heard one of them say: "It is a dirty lie." Jamison saw the appellant strike the deceased twice but did not see the knife at the time.

The appellant's evidence was in substance as follows: He was a married man about forty-two years of age. There had been no difficulty between him and the deceased prior to the time of the homicide. He did not take the remark that deceased made sometime before the encounter as referring to him as he was not interfering with the family affairs of Ford. As he was going to the store to make a purchase, the deceased approached him and said: "Listen here; what I learn you are meddling into my family affairs." Appellant said: "No, sir; I beg your pardon." Deceased said: "Yes, sir; I mean you. I ain't talking about nobody but you." At that time Ford had his hand in his pocket and was taking out what appeared to be a knife. The appellant did not know whether it was open or not, but upon seeing the handle of the knife, he drew his own and struck the deceased. The appellant's knife was an old one that he had used on the farm. The deceased appeared angry when he said: "You are a lie; I mean you." The appellant was afraid that his life was in danger. After Ford was struck, both parties jumped back and the deceased reached for a brick, rock or something. The appellant also reached for and threw a brick at the deceased. At that time he could not say whether the deceased had a knife in his hand or not. Appellant claimed to have lost his knife.

The wife of the deceased and the appellant's wife were sisters. The wife of the deceased testified that the appellant had had no improper relations with her.

The wound, as described by the doctor who examined the deceased soon after the blow was struck, was a large wound in front just to the left of the breast bone, beginning just below the collar bone running downward and inward, extending about six inches, and severed the cartilages and two ribs. The doctor expressed the opinion that the heart of the deceased was probably punctured; that the wound was such as could have been made with a knife and was necessarily a fatal wound.

Appellant bore a good reputation for peace and quietude.

There are no bills of exceptions complaining of the rulings of the court except such as relate to attacks on the court's charge. The charge is long and is regarded as well adapted to accurately guide the jury in passing upon the controverted issues. Quotation at length from the charge is impractical and unnecessary.

The law of murder with malice aforethought, also without malice aforethought, self-defense, including both real and apparent danger, as well as the special paragraph applying the alleged threat of the

deceased to the law of self-defense, aggravated assault and suspended sentence, was given in the charge. The verdict of five years' confinement is suggestive of a finding by the jury against the State on the issue of malice aforethought.

Touching some of the complaints of the charge of the court, the following remarks are deemed pertinent: In embracing the definition of murder in two paragraphs of the charge instead of one, no error is perceived. The exact language of the statute was used. See Acts of 40th Leg., Reg. Sessions, Chap. 274, p. 412. In Paragraph 5 of the charge malice is defined in terms often approved, and in Paragraph 6 malice aforethought is defined in language approved by this court in the case of Davis v. State, 10 S. W. (2d) 117. The cases of Claxton v. State, 4 S. W. (2d) 542, and Collins v. State, 299 S. W. Rep. 403, are not deemed to justify in any sense the criticisms of the charge in the present case.

The attack on Paragraph 9 of the charge when considered (as it must be) in connection with other parts of the charge, is not deemed subject to the complaint that the jury was privileged to determine the question of apparent danger from their standpoint instead of that of the appellant. In Paragraph 10, which refers to and immediately follows Paragraph 9, the jury is specifically told that the danger or appearance of danger was to be judged *"as it appeared to him from his standpoint at the time."* So, in Paragraph 11, wherein the law of threats as related to the law of self-defense was given, the jury was again told that the appearance of danger must be *"viewed from his standpoint at the time."* The same idea and information is also conveyed to the jury in express terms by Special Charge No. 3 given at appellant's request.

The refusal to give the appellant's requested charge No. 8 was proper. It but repeated that which, in an appropriate manner, was embraced in the main charge of the court. The jury was instructed by the court in connection with the instruction on the law of self-defense, that if the appellant acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, he was in no event bound to retreat in order to avoid the necessity of killing the deceased. The criticism of the court's charge because of alleged omission or inadequate instruction on the right to stand his ground, is not supported by the record.

In instructing that in protecting himself against real or apparent danger the appellant was "justified in using such force as appeared to him to be necessary," the rights of the appellant were fully con-

134

served. No precedent has been cited and we are aware of none which under facts similar to the present would demand that the jury be instructed that in addition to the instruction quoted above the court should tell the jury that the accused, for his protection, had the choice of weapons. The statute under which the accused was prosecuted contemplates that in the event of conviction, the jury, in measuring the punishment, should take into consideration all relevant facts in evidence, and in so instructing the learned trial judge but followed the statute and committed no error.

To the claim that the verdict is not sustained by the proof this court is unable to give sanction.

The judgment is affirmed.

*Affirmed.*